**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individual and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>      vs.<br><br>HYTTO PTE. LTD., (D/B/A) "LOVENSE", a Singaporean Private Limited Company,<br><br>          Defendants. | **CLASS ACTION**<br><br>**CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:**<br><br>  **(1) CALIFORNIA CONSUMER PRIVACY ACT § 1798.150;**<br>  **(2) CALIFORNIA PRIVACY RIGHTS ACT;**<br>  **(3) CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*;**<br>  **(4) NEGLIGENCE; and**<br>  **(5) NEGLIGENCE PER SE.**<br><br>**DEMAND FOR JURY TRIAL** |

Class Action Complaint

Plaintiff Jane Doe ("Plaintiff"), individually and on behalf of classes of similarly situated individuals (defined below), bring this action against Defendant Hytto Pte. Ltd., doing business as "Lovense" ("Lovense" and/or "Defendant").

**I.**

**SUMMARY OF THE CASE**

1.    In or about July 2025, several reports confirmed that Defendant's systems contained severe security flaws that allowed any user to obtain another user's email address—and, more dangerously, to take over another user's account entirely—without their knowledge or consent.

2.    Plaintiff, who has maintained an active Lovense account since February 2024, brings this action against Defendant for its negligent failure to safeguard user data, its unlawful disclosure of personally identifiable information, and its violations of California's statutory privacy protections, including but not limited to the California Consumer Privacy Act (CCPA), the California Privacy Rights Act (CPRA) (Civil Code § 1798.100 et seq.), and the Unfair Competition Law (UCL), Business & Professions Code § 17200 et seq.

3.    Defendant's clients and customers, including Plaintiff, trust that their Personally Identifiable Information ("PII") will be maintained in a secure manner and kept from unauthorized disclosure to third parties as outlined in Lovense's Privacy Policy page.[1]

4.    Defendant's platform inherently involves the collection and processing of sensitive PII, including but not limited to users' names, usernames, email addresses, IP addresses, sexual activity data, device usage patterns, and potentially biometric or intimate behavioral indicators associated with the use of connected devices.

5.    Due to the vulnerabilities identified in Defendant's application, Plaintiff's PII were exposed to unauthorized third parties. This exposure created substantial risks of financial fraud, harassment, blackmail, and the public disclosure of deeply private and intimate matters.

6.    According to the report, Defendant had knowledge of these vulnerabilities on or about March 26, 2025, yet failed to immediately and fully remedy the flaws. Instead, Defendant

---

[1] Lovense Privacy Policy, https://www.lovense.com/privacy-policy (last accessed on August 12, 2025)

Class Action Complaint

opted for a remediation plan that could take up to 14 months; only after public disclosure on or about July 2025 did Defendant implement a patch within 48 hours[2] (the "Data Breach").

7.    The PII disclosed in the Data Breach is protected by the California Consumer Privacy Act of 2018 ("CCPA"). For purposes of CCPA Section 1798.150, "personal information" includes "[a] username of e-mail address in combination with a password or security question and answer that would permit access to an online account".[3]

8.    Here, "[u]sing only an email address, an attacker could generate authentication tokens without needing a password. Using these tokens, an attacker could impersonate a user on Lovense platforms, including Lovense Connect, StreamMaster, and Cam101."[4]

9.    When nonencrypted and nonredacted personal information defined in Section 1798.150 is subjected to unauthorized access and exfiltration, theft, or disclosure by a company that has failed to maintain reasonable security measures, the CCPA explicitly authorizes private litigants to bring individual or class action claims.[5]

10.    Defendant has failed to maintain reasonable security controls and systems appropriate for the nature of the PII it maintains as required by the CCPA and other common and statutory laws. According to one blogger for the International Association for Privacy Professionals, "encryption is a security strategy …[that] protects your organization from scenarios like a devastating breach where, if the adversary were to gain access to your servers, the data stored would be of no use to them, unless they have the encryption key. It's an all-or-nothing security posture:

---

[2] Sex toy maker Lovense caught leaking users' email addresses and exposing accounts to takeovers, available at https://techcrunch.com/2025/07/29/sex-toy-maker-lovense-caught-leaking-users-email-addresses-and-exposing-accounts-to-takeovers/ (last accessed August 13, 2025)

[3] In other sections of the CCPA, "personal information" is defined more broadly as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household."

[4] Lovense sex toy app flaw leaks private user email addresses, available at: https://www.bleepingcomputer.com/news/security/lovense-sex-toy-app-flaw-leaks-private-user-email-addresses/#:~:text=Updates%20added%20to%20the%20bottom,hijacking%20flaw%2C%20was%20subsequently%20fixed. (last accessed August 13, 2025).

[5] CCPA Section 1798.192 also states: "Any provision of a contract or agreement of any kind that purports to waive or limit in any way a consumer's rights under this title, including, but not limited to, any right to a remedy or means of enforcement, shall be deemed contrary to public policy and shall be void and unenforceable."

You either get to see the data unencrypted, or you don't."[6] "[O]rganizations should encrypt their data on a disk as a required security measure. But they must not stop there. In fact, the CCPA is clear that they should go further." *Id.*

11.     Defendant also failed to maintain proper measures to detect hacking and intrusion. As explained below, Defendants should have had breach detection protocols in place. If they had, they could have learned of the breach and alerted customers.

12.     Nearly all "best practices" security frameworks, e.g., the U.S. National Institute of Standards and Technology's (NIST) Special Publication 800, require log aggregation, log monitoring, and automated intrusion detection systems that alert a company of unauthorized access or the anomalous use of hacked user accounts. Had Defendant properly deployed those industry standard systems, the breach might not have occurred or, if it had, Defendant would have promptly detected it.

13.     Because (i) Defendant has failed to maintain reasonable security measures, and (ii) Defendant disclosed their customers' unencrypted email addresses, the CCPA explicitly permits an individual or class action under Section 1798.150 for this Data Breach.

14.     Defendants disregarded Plaintiff's and Class members' privacy rights in the PII by, among other things, (i) failing to implement reasonable security safeguards to prevent or timely detect the Data Breach; (ii) failing to detect the Data Breach when or after it occurred; (iii) failing to disclose to customers that it did not implement such reasonable security safeguards; and (iv) failing to provide sufficiently prompt, thorough, and accurate notice and information about the Data Breach.

15.     As a result of the Data Breach, Plaintiff and the Classes have been injured in several ways. Plaintiff and Class members (i) now know or should know that their PII was hacked and put up for sale on the dark web for purchase by malicious actors; (ii) face an imminent and ongoing risk of identity theft and similar cybercrimes; (iii) have expended and will continue to expend time and money to protect against cybercrimes; (iv) have lost value in their PII; and (v) did not receive the

---

[6] Tuow, Steve, Encryption, redaction and the CCPA, available at https://iapp.org/news/a/encryption-redaction-and-the-ccpa/ (last accessed July 14, 2022).

benefit of their bargain with Defendant regarding data privacy.

16.     Plaintiff and Class members are therefore (i) entitled to actual and statutory damages under the CCPA and other laws, (ii) have incurred actual and concrete damages as a result of the unauthorized sale of their PII to malicious actors on the dark web, and (iii) face ongoing risks of disclosure of their PII in subsequent data breaches because Defendants have not demonstrated that they have implemented reasonable security systems and procedures. Plaintiff and Class members have a significant interest in the protection and safe storage of their PII. They are therefore entitled to declaratory, injunctive, and other equitable relief necessary to protect their PII. This includes, but is not limited to, an order compelling Defendants to adopt reasonable security procedures and practices to safeguard customers' PII and prevent future data breaches.

17.     This is likewise a class action alleging violations of the California Privacy Rights Act ("CPRA"), which expands upon the CCPA and imposes enhanced data protection obligations on businesses, including the requirement to provide notice, implement heightened security measures, and limit data retention.

18.     This is also a consumer class complaint seeking restitution of all monies unlawfully earned by Defendants for the access to their Systems. Defendants have consistently failed to inform the public, including Plaintiff, that the personal information they provided when they accessed the Systems will be disclosed by Defendants to third parties without their consent and authorization.

**II.**

**JURISDICTION AND VENUE**

19.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiff, and at least one member of the putative Class, as defined below, are citizens of a different state than Defendant, there are more than 100 putative Class Members, and the amount in controversy exceeds $5 million, exclusive of interest and costs. This Court has jurisdiction over Defendant because Defendant operates in and directs commerce to this District. Defendant intentionally avails itself of the markets within this District, rendering the exercise of jurisdiction by this Court just and proper. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this District.

4

# III.

## PARTIES

**A.    PLAINTIFF**

20.    Plaintiff Jane Doe is a natural person and a permanent, non-transitory resident of the State of California. Plaintiff is proceeding under a pseudonym in this action to protect her privacy and to avoid further disclosure of sensitive personal and health-related information. Plaintiff intends to file a motion to proceed anonymously pursuant to Federal Rules of Civil Procedure 10(a).

21.    Like millions of others, Plaintiff provided and entrusted her PII to Defendants. In or about July 2025, Plaintiff discovered through publicly availably reports that the Defendant's systems contained a serious vulnerability that exposed users' private email addresses, allowing any logged-in user to retrieve another user's actual email address with nothing more than a username. Because of the Data Breach, Plaintiff has continuously monitored her various accounts to detect misuse of her PII and will continue to expend time to protect against fraudulent use or sale of her PII.

**B.    DEFENDANT**

22.    Defendant Hytto Pte. Ltd., (d/b/a) "Lovense", a Singaporean Private Limited Company. Defendant is a manufacturer of internet-connected sex toys that can interact with each other and be remotely controlled via the user's mobile application. These products are sold through the Defendant's website at www.lovense.com.

**D.    AGENCY/AIDING AND ABETTING**

23.    At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance

24.    Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the

5

Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

# IV.

## FACTUAL BACKGROUND

**A.    DEFENDANTS' RELEVANT PRIVACY POLICIES**

25.    Since February 2024, Plaintiff has maintained a Lovense account, which required Plaintiff to provide personal information to Defendants.

26.    Lovense is a company specialized in app-controlled sex toys that required users to create an account to operate its devices, which involved submitting personally identifiable information (PII) such as name, username, email address, and potentially a phone number. In addition to this, the company collected connection logs that included IP addresses and geolocation data. Through device pairing and app usage, Lovense also gathered and transmitted highly sensitive personal and medical information, including records of sexual activity, device usage patterns, and interactive video chat content.[7]

27.    In or about July 2025, multiple reputable source reported that Lovense's systems were leaking users' private email addresses through a vulnerability in the Lovense application.[8]

28.    According to this report,[o]n or about March 26, 2025, Defendant became aware of unauthorized activity on a portion of its information technology systems. Upon learning of the unauthorized activity, Defendant intentionally delayed implementing corrective measures,

---

[7] Lovense Privacy Policy, https://www.lovense.com/privacy-policy. (last accessed August 14, 2025); Company Accused of Spying on Customers Via Sex Toys available at https://www.courthousenews.com/company-accused-of-spying-on-customers-via-sex-toys/ (last accessed August 14, 2025).

[8] See e.g., Sex toy maker Lovense caught leaking users' email addresses and exposing accounts to takeovers available at https://techcrunch.com/2025/07/29/sex-toy-maker-lovense-caught-leaking-users-email-addresses-and-exposing-accounts-to-takeovers/. (last accessed August 14, 2025).

Class Action Complaint

prioritizing user convenience and retention over user safety.[9]

29.    Defendant's failure to provide reasonable security for Plaintiffs' personal information resulted in the unauthorized access and exfiltration, theft, or disclosure of this information.

30.    It was only in or about July 2025, when the report disclosed that Defendant's systems contained severe security flaws that allowed any user to obtain another user's email address—and to take over another user's account entirely—without their knowledge or consent.[10].

31.    Defendant's Privacy Policy is available on its website and provides customers with terms and conditions regarding the treatment of their PII. It states:

> Lovense Privacy Policy
>
> Effective: October 10, 2024
>
> As your Service provider, HYTTO PTE. LTD., its related corporations and affiliates, ("we", "our" or "us") respects your legal rights of privacy when collecting, storing, using and transmitting Personal Information (as defined below) and this Privacy Policy explains our privacy practices.. …
>
> 6. HOW WE SECURE YOUR INFORMATION AND CONTENT
> The Company takes commercially reasonable steps to protect the Personal Data provided via the Services from loss, misuse, and unauthorized access, disclosure, alteration, or destruction. The Company uses security measures for any personal and account data that we store (emails, phone numbers, etc.). Account-identifiable or user-identifiable data collected through the Services may be encrypted and stored on our internal databases. The Company will not sell or transfer account-identifiable data to third parties. Any accessible data associated with your account or your profile can be retrieved only if you provide us with your account identifier. Please be reminded, however, that no internet or email transmission or data storage is ever fully secure or error free and that information on the Services may be accessed, disclosed or altered. In particular, email sent to or from the Services may not be secure. Therefore, you should take special care in deciding what information you send to us. Please keep this in mind when disclosing any Personal Data to Company via the Internet.[11]

---

[9] *Id.*

[10] *Id.*

[11] Lovense's Privacy Policy, https://www.lovense.com/privacy-policy last accessed on August 12, 2025.

32.    Defendant's Privacy Policy assures its customers their PII is secure. By failing to protect its customers' PII through reasonable security measures, Defendant has shared personal information with others for purposes other than the services customers requested without customers' permission.

33.    Despite these assurances and the significant benefit Defendant receives by collecting and maintaining its customers' PII, Defendant did not adopt reasonable data measures and systems to protect customers' PII or prevent and detect unauthorized access to this data. Defendant maintains a business that collects hundreds of millions of dollars from customers each year; it has the resources to adopt reasonable protections and should have known to do so. The protections afforded by implementing the best practices delineated in modern security practices frameworks are not unduly expensive for a company like Defendant and are commonly deployed by commercial businesses throughout the world. It knew or should have known that its systems' inadequate protections placed its customers at significant risk of having their PII stolen by hackers.

34.    Defendant requires its customers to disclose their PII to provide them with the Services. It collects, retains, and uses that data to maximize profits through predictive marketing and other targeted marketing practices. By collecting, using, and deriving significant benefit from customers' PII, Defendant had a legal duty to take reasonable steps to protect this information from disclosure. As discussed below, Defendants also had a legal duty to take reasonable steps to protect customers' PII under applicable federal and state statutes, including Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the California Consumer Protection Act of 2018 (the "CCPA"), Cal. Civ. Code § 1798, et seq. FTC Security Guidelines Concerning PII, and the CPRA.

35.    The Federal Trade Commission ("FTC") has established security guidelines and recommendations to help entities protect PII and reduce the likelihood of data breaches.

36.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendants. Several publications by the FTC outline the importance

of implementing reasonable security systems to protect data. The FTC has made clear that protecting

sensitive customer data should factor into virtually all business decisions.

37.     In 2016, the FTC provided updated security guidelines in a publication titled

Protecting Personal Information: A Guide for Business. Under these guidelines, companies should

protect consumer information they keep; limit the sensitive consumer information they keep;

encrypt sensitive information sent to third parties or stored on computer networks; identify and

understand network vulnerabilities; regularly run up-to-date anti-malware programs; and pay

particular attention to the security of web applications – the software used to inform visitors to a

company's website and to retrieve information from the visitors.

38.     The FTC recommends that businesses do not maintain payment card information

beyond the time needed to process a transaction; restrict employee access to sensitive customer

information; require strong passwords be used by employees with access to sensitive customer

information; apply security measures that have proven successful in the particular industry; and

verify that third parties with access to sensitive information use reasonable security measures.

39.     The FTC also recommends that companies use an intrusion detection system to

immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a

hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from

the system; and develop a plan to respond effectively to a data breach in the event one occurs.

40.     The FTC has brought several actions to enforce Section 5 of the FTC Act. According

to its website:

> When companies tell consumers they will safeguard their personal information, the
> FTC can and does take law enforcement action to make sure that companies live up
> these promises. The FTC has brought legal actions against organizations that have
> violated consumers' privacy rights, or misled them by failing to maintain security
> for sensitive consumer information, or caused substantial consumer injury. In many
> of these cases, the FTC has charged the defendants with violating Section 5 of the
> FTC Act, which bars unfair and deceptive acts and practices in or affecting
> commerce. In addition to the FTC Act, the agency also enforces other federal laws
> relating to consumers' privacy and security.

41.     Defendant was aware or should have been aware of its obligations to protect its

customers' PII and privacy before and during the Data Breach, yet failed to take reasonable steps to

Class Action Complaint

protect customers from unauthorized access. Among other violations, Defendant violated its obligations under Section 5 of the FTC Act.

42.    For example, Defendant's delayed remediation schedule—potentially up to 14 months indicates that it does not use an adequate intrusion detection system to immediately expose a data breach; does not sufficiently monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; does not properly monitor for the transmission of large amounts of data from the system; and does not maintain an appropriate plan to respond effectively to a data breach in the event one occurs.

**B.    THE DATA BREACH HARMED PLAINTIFFS AND CLASS MEMBERS**

43.    Plaintiff and Class members have suffered and will continue to suffer harm because of the Data Breach.

44.    Plaintiff and Class members face an imminent risk of injury of identity theft and related cybercrimes due to the Data Breach. Once data is stolen, malicious actors will either exploit the data for profit themselves or sell the data on the dark web to someone who intends to exploit the data for profit. Hackers would not incur the time and effort to steal PII and then risk prosecution by listing it for sale on the dark web if the PII was not valuable to malicious actors.

45.    The dark web helps ensure users' privacy by effectively hiding server or IP details from the public. Users need special software to access the dark web. Most websites on the dark web are not directly accessible via traditional searches on common search engines and are therefore accessible only by users who know the addresses for those websites.

46.    Malicious actors use PII to gain access to Class members' digital life, including bank accounts, social media, and credit card details. During that process, hackers can harvest other sensitive data from the victim's accounts, including personal information of family, friends, and colleagues.

47.    Malicious actors can also use Class members' PII to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."

48.    The PII accessed in the Data Breach therefore has significant value to the hackers that have already sold or attempted to sell that information and may do so again. In fact, names, mailing and email addresses, dates of birth, phone numbers, account information, and purchasing preferences are among the most valuable pieces of information for hackers.

49.    The PII accessed in the Data Breach is also very valuable to Defendant. Defendant collects, retains, and uses this information to increase profits through predictive and other targeted marketing campaigns. Defendant's customers value the privacy of this information and expect Defendant to allocate enough resources to ensure it is adequately protected. Customers would not have done business with Defendant, provided PII, and/or paid the same prices for Defendant's services had they known Defendant did not implement reasonable security measures to protect their PII.  Customers expect that Defendant's premium prices incorporate Defendant's operating costs, including costs to implement reasonable security measures to protect customers' personal information.

50.    The PII accessed in the Data Breach is also very valuable to Plaintiffs and Class members. Consumers often exchange personal information for goods and services. For example, consumers often exchange their personal information for access to Wi-Fi in places like airports and coffee shops. Likewise, consumers often trade their names and email addresses for special discounts (e.g., sign-up coupons exchanged for email addresses). Consumers use their unique and valuable PII to access the financial sector, including when obtaining a mortgage, credit card, or business loan. As a result of the Data Breach, Plaintiffs and Class members' PII has been compromised and lost significant value.

51.    Plaintiff and Class members will face a risk of injury due to the Data Breach for years to come. Malicious actors often wait months or years to use the personal information obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen personal information, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Finally, there is often significant lag time between when a person suffers harm due to theft of their PII and when they discover the harm. For example, victims rarely know that certain accounts have

been opened in their name until contacted by collections agencies. Plaintiff and Class members will therefore need to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them.

52.     Plaintiff and Class members have and will continue to expend significant time and money to reduce the risk of and protect against identity theft caused by the Data Breach. According to the 2018 IBM/Ponemon Institute study, the average cost of a data breach in the United States is $242 per victim and roughly $8 million per breach for companies. Where a consumer becomes a victim of identity theft and suffers $1 or more in direct or indirect losses, the average cost to the consumer is $1,343. 63. Even when reimbursed for money stolen due to a data breach, consumers are not made whole because the reimbursement fails to compensate for the significant time and money required to repair the impact of the fraud. On average, victims of identity theft spend 7 hours fixing issues caused by the identity theft. In some instances, victims spend more than 1,000 hours trying to fix these issues.

53.     Victims of identity theft also experience harm beyond economic effects. According to a 2018 study by the Identity Theft Resource Center, 32% of identity theft victims experienced negative effects at work (either with their boss or coworkers) and 8% experienced negative effects at school (either with school officials or other students).

54.     The U.S. Government Accountability Office likewise determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."

C.     **DEFENDANTS FAILED TO TAKE REASONABLE STEPS TO PROTECT ITS CUSTOMERS' PII**

55.     Defendant requires its customers to disclose a significant amount of highly personal and confidential PII to provide them with the Services. Defendants collect, store, and use this data to maximize profits.

56.     Defendant has legal duties to protect its customers' PII by implementing reasonable security features. This duty is further defined by federal and state guidelines and industry norms.

12

57.     Defendants breached their duties by failing to implement reasonable safeguards to ensure Plaintiff's and Class members' PII was adequately protected. As a direct and proximate result of this breach of duty, the Data Breach occurred, and Plaintiff and Class members were harmed. Plaintiff and Class members did not consent to having their PII disclosed to any third party, much less a malicious hacker who would sell it on the dark web.

58.     The Data Breach was a reasonably foreseeable consequence of Defendants' inadequate security systems. Defendant has the resources to implement reasonable security systems to prevent or limit damage from data breaches. Even so, it failed to properly invest in its data security. Had Defendant implemented reasonable data security systems and procedures (i.e., followed guidelines from industry experts and state and federal governments), then it likely could have prevented hackers from infiltrating its systems and accessing its customers' PII.

59.     Defendant's failure to implement reasonable security systems has caused Plaintiff and Class members to suffer and continue to suffer harm that adversely impact Plaintiff and Class members economically, emotionally, and/or socially. As discussed above, Plaintiff and Class members now face an imminent and ongoing threat of identity theft and resulting harm. These individuals now must spend significant time and money to continuously monitor their accounts and credit scores to limit potential adverse effects of the Data Breach regardless of whether any Class member ultimately falls victim to identity theft.

60.     Defendants also had a duty to timely discover the Data Breach and notify Plaintiff and Class members that their PII had been compromised. Defendants breached this duty by failing to use reasonable intrusion detection measures to identify the Data Breach when it occurred, and then, once it learned of the Data Breach, failing to inform affected customers. For over a year prior to the Defendant finally addressing and resolving critical flaws in its systems, customers' PII was in the hands of hackers and for sale to malicious actors.

61.     In sum, Plaintiffs and Class members were injured as follows: (i) theft of their PII and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII; (iii) diminution in value of their PII; (iv) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (v) ascertainable out-

of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; and (vi) overpayments to Defendant for services purchased, as Plaintiff and Class members reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII, which was not the case.

62.    Defendant has failed to recognize the impact of the Data Breach on its customers. However, as discussed above, the threat of identity theft and fraud from the Data Breach will extend for years and cost Plaintiff and the Classes significant time and effort.

63.    Plaintiff and Class members therefore have a significant and cognizable interest in obtaining equitable relief (in addition to any monetary damages) that protects them from these long-term threats. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

**V.**

**CLASS ACTION ALLEGATIONS**

64.    Plaintiff bring this action under Code of Civil Procedure §382, individually and on behalf of all other persons similarly situated.  The putative class that Class Representatives seek to represent is composed of: All persons residing in California whose PII was compromised in the Data Breach (hereinafter the "Class").

65.    Excluded from the Class are the natural persons who are directors, and officers, of the Defendants.  Class Representatives expressly disclaim that they are seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

66.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiff at this time, this can be ascertained through appropriate discovery.

67.    Plaintiff's claims are typical of the claims of the members of the Class. All Class members were subject to the Data Breach and had their PII exposed or accessed in the Data Breach. Likewise, Defendants' misconduct impacted all Class members in the same manner.

68.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with Class members' interests because they were subject to the same Data

14

Breach as Class members and face similar threats as a result of the Data Breach. Plaintiff have also retained competent counsel with significant experience litigating complex class actions.

69.     Defendants have acted in a manner that applies generally to Plaintiff and all Class members. Each Class member has been similarly impacted by Defendants' failure to maintain reasonable security procedures and practices to protect customers' PII, as well as Defendants' failure to timely alert affected customers to the Data Breach.

70.     Common questions of law and fact predominate over questions affecting individual Class members. The common questions of fact and law include:

(a)     whether Defendant violated § 1798.150 of the CCPA by failing to prevent Plaintiff's and Class members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information;

(b)     whether Defendant violated the CPRA by failing to prevent Plaintiff's and Class members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information;

(b)     whether Defendant's misconduct identified herein amounts to a violation of Cal. Bus. & Prof. Code § 17200, et seq.;

(c)     whether Defendant owed Plaintiff and Class members a duty to implement and maintain reasonable security procedures and practices to protect their personal information;

(d)     whether Defendant acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class members' PII;

(e)     whether Defendant adequately addressed and fixed vulnerabilities that permitted the Data Beach to occur;

(f)     whether Defendant breached its duty to implement reasonable security systems to protect Plaintiff's and the Class members' PII;

(g)     whether Defendant's breach of its duty to implement reasonable security systems directly and/or proximately caused damages to Plaintiff and Class members;

(h)     whether and when Defendant learned of the Data Breach and whether the response was adequate;

(i)     whether Plaintiff and other Class members are entitled to credit monitoring and other injunctive relief;

(j)     whether Defendant provided timely notice of the Data Breach to Plaintiff and Class members;

(k)     whether, prior to the Data Breach, Defendant knew or should have known that their security systems were vulnerable to the type of cyber-attack that led to the Data Breach;

(l)     whether Class members are entitled to compensatory damages, punitive

15

damages, and/or statutory or civil penalties as a result of the Data Breach.

71.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common questions of fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. There will be no difficulty in the management of this action as a class action.

72.     Proper and sufficient notice of this action may be provided to the Class members through direct mail.

73.     Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative and the members of the Class will continue to be damaged by the unauthorized release of their PII.

**VI.**

**COUNTS**

**COUNT I**
**Violations of the California Consumer Privacy Act of 2018**
**[Cal. Civ. Code § 1798.150]**
**(Against All Defendants)**

74.     Plaintiff repeat and reallege every allegation set forth in the preceding paragraphs.

75.     Plaintiff and the Class members hereby seek relief under § 1798.150(a), including, but not limited to, (i) recovery of actual damages or damages in an amount not less than $100 and not greater than $750 per consumer per incident, whichever is greater, (ii) injunctive or declaratory relief, and (iii) any other relief the Court deems proper, including attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5.

76.     Plaintiff and Class members also seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards customers' PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold

16

customers' PII, including Plaintiff's and Class members' PII. These individuals have an interest in ensuring that their PII is reasonably protected.

77.     Defendant is a company organized or operated for the profit or financial benefit of its owners with annual gross revenues over $1.6 billion. Defendant collected consumers' PII as defined in Cal. Civ. Code § 1798.140.

78.     Defendants violated § 1798.150 of the CCPA by failing to prevent Plaintiff's and Class members' nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

79.     Defendants collect consumers' personal information as defined in Cal. Civ. Code § 1798.140. Defendants have a duty to implement and maintain reasonable security procedures and practices to protect this personal information. As identified herein, Defendants failed to do so. As a direct and proximate result of Defendants' acts, Plaintiff's and Class members' personal information, including unencrypted email addresses, among other information, was subjected to unauthorized access and exfiltration, theft, or disclosure.

80.     Based on the foregoing, Plaintiffs' claim for statutory damages under the CCPA is therefore proper.

**COUNT II**
**Violation of the California Privacy Rights Act**
**[Civil Code § 1798.100 *et seq.*]**
**(Against All Defendants)**

81.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

82.     The CPRA expands upon the CCPA and imposes enhanced data protection obligations on businesses, including the requirement to provide notice, implement heightened security measures, and limit data retention.

83.     Defendants failed to comply with these enhanced obligations, including but not limited to: (a) inadequate transparency regarding their data collection, storage, and use practices; (b) retaining personal information longer than necessary; and (c) failing to limit use and disclosure

Class Action Complaint

of sensitive personal data.

84.    As a result of Defendants' non-compliance as outlined above, Plaintiff and the Class's personal information were compromised.

85.    Plaintiff seek available statutory remedies, including but not limited to statutory and actual damages, injunctive relief, and attorney's fees and costs.

**COUNT III**
**Violations of the California Unfair Competition Law,**
**[Cal. Bus. & Prof. Code §17200, *et seq.*]**
**(Against All Defendants)**

86.    Plaintiff repeat and reallege every allegation set forth in the preceding paragraphs.

87.    Defendants engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.

88.    Defendants engaged in unlawful acts and practices by maintaining sub-standard security practices and procedures as described herein, by soliciting, collecting, and profiting from Plaintiff's and Class members' PII knowing that it would not be adequately protected, and by storing Plaintiff's and Class members' PII in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendants to implement and maintain reasonable security procedures and practices to safeguard the PII of Plaintiff and the Class.

89.    In addition, Defendants engaged in unlawful acts and practices by failing to disclose the Data Breach to the Plaintiff and the Class in a timely and accurate manner contrary to the duties imposed by Cal. Civ. Code §1798.82.

90.    As alleged herein, Defendants engaged in negligence, among other unfair acts and practices. Plaintiffs and Class members were directly and proximately harmed in several ways as a result of Defendants' unlawful and/or unfair conduct and are entitled to all available injunctive relief, including but not limited to an order mandating Defendants to (i) implement reasonable security measures to protect its customers' PII and (ii) provide free credit monitoring to customers affected by the Data Breach.

91.    California Business & Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful,  unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

92.    Plaintiff and the Class accessed Defendant's Systems  and have suffered injury in fact and have lost money or property as a result of the unlawful, unfair, or fraudulent business practices and unfair, deceptive, untrue, or misleading advertising.

93.     The acts and practices described above violate 16 CFR 1632.31 for failing to properly disclose how it will handle the Class's PII and therefore satisfy and violate the "unlawful" provisions of § 17200.

94.    The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

95.    As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of millions of dollars in ill-gotten gains from the sale of their products in California to Plaintiff and the Class, sold in large part as a result of the acts and omissions described herein.

96.    Plaintiff, pursuant to California Business & Professions Code § 17203, seek an order of this court compelling  the Defendants to provide  restitutionary disgorgement and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

## COUNT IV
### (NEGLIGENCE)

97.    Plaintiff incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

98.    Defendant required Plaintiff and Class Members to submit non-public, sensitive PII and other data when the latter accessed Defendant's Systems.

99.    Defendant had, and continues to have, a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding and protecting their PII and other data. Defendant also had, and continues to have, a duty to use ordinary care in activities from which harm might be reasonably

anticipated, such as in the collection, storage and protection of PII and other data within their possession, custody and control.

100.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and the Class. The special relationship arose because Plaintiff and the Members of the Class had entrusted Defendant with their PII and other data when they accessed the Systems. Only Defendant was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiff and the Class Members from a data breach.

101.    Defendant violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the PII and other data entrusted to it, including Plaintiff and Class Members' Private Information and other data as aforesaid. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff and Class Members' PII and other data.

102.    Defendant, by and through its negligent actions, inaction, omissions, and want of ordinary care, unlawfully breached its duties to Plaintiff and Class Members by, inter alia, failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' PII and other data within its possession, custody, and control.

103.    Defendant, by and through its negligent actions, inactions, omissions, and want of ordinary care, further breached its duties to Plaintiff and Class Members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit their processes, controls, policies, procedures, protocols, and software and hardware systems for complying with the applicable laws and safeguarding and protecting their PII and other data.

Class Action Complaint

104.    But for Defendant's negligent breach of the above-described duties owed to Plaintiff and Class Members, their PII and other data would not have been released, disclosed, and disseminated without their authorization.

105.    Plaintiff and Class Members' PII and other data was transferred, sold, opened, viewed, mined and otherwise released, disclosed, and disseminated to unauthorized persons without their authorization as the direct and proximate result of Defendant's failure to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff and Class Members' PII and other data.

106.    As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class Members have suffered, and will continue to suffer, ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and noneconomic harm.

107.    Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused this Data Breach constitute negligence.

108.    Plaintiff is entitled to compensatory and consequential damages suffered as a result of the Data Breach.

109.    Plaintiff is also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security programs and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide robust and adequate credit monitoring to all Class Members, and any other relief this Court deems just and proper.

Class Action Complaint

**COUNT V**
**(NEGLIGENCE PER SE)**

110.    Plaintiff incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

111.    Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the personal and financial information of Plaintiff and Class Members.

112.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII and other data of Plaintiff and Class Members. The pertinent FTC publications and orders form part of the basis of Defendant's duty in this regard.

113.    Defendant required, gathered, and stored personal and financial information of Plaintiff and Class Members in order to enable the latter to access the Systems.

114.    Defendant violated the FTCA by failing to use reasonable measures to protect the PII and other data of Plaintiff and Class Members and by not complying with applicable industry standards, as described herein.

115.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

116.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

117.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering unemployment benefits; potentially defending themselves from legal action base upon fraudulent applications for unemployment benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data

breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

118.    Defendant's violation of the FTCA constitutes negligence per se.

119.    For the same reasons and upon the same bases, Defendant's violation of the CCPA, CPRA, UCL, and various other State and local statutes, constitutes negligence per se.

120.    As a direct and proximate result of Defendant's violation of the foregoing statutes and regulations, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully request the Court to grant Plaintiff and the Class members the following relief against Defendants:

A. A determination that this action is a proper class action under Code of Civil Procedure §382, certifying Plaintiff as Class representatives, and appointing the undersigned counsel as Class counsel;

B. An award of compensatory damages, punitive damages, statutory and civil penalties to Plaintiff and the Class as warranted by the CCPA, CPRA, UCL, and other applicable law;

C. Injunctive or other equitable relief that directs Defendants to provide Plaintiff and the Class with free credit monitoring beyond 12 months and to implement reasonable security procedures and practices to protect customers' PII that conform to relevant federal and state guidelines and industry norms;

D. Declaratory judgement in favor of Plaintiff determining that Defendants' failure to implement reasonable security measures violates the CCPA and the CPRA;

E. An award of reasonable costs and expenses incurred in prosecuting this action, including attorneys' fees and expert fees pursuant to Cal. Code Civ. P. § 1021.5; and

F. Such other relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff and the Class demand a trial by jury on all issues so triable as a matter of right.

**POTTER HANDY LLP**

/s/ James M. Treglio

Dated: August 14, 2025                    By: _____

Mark D. Potter, Esq.
James M. Treglio, Esq.
Isabel Rose Masanque, Esq.
Attorneys for the Plaintiffs and the Class

Class Action Complaint