Scott Raber (SBN 194924)
RIMON, P.C.
545 Middlefield Road, Suite 250
Menlo Park, CA 94025
Telephone: (415) 693-9208
scott.raber@rimonlaw.com

Michael S. Lazaroff (*Pro Hac Vice* application pending)
RIMÔN P.C.
400 Madison Avenue, Suite 11D
New York, NY 10017
Tel: (646) 738-4151
Fax: (212) 363-0270
michael.lazaroff@rimonlaw.com
Attorneys for Defendant

HYTTO PTE. LTD., (D/B/A) “LOVENSE”

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE, individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HYTTO PTE. LTD., (D/B/A) “LOVENSE”, a Singaporean Private Limited Company,<br><br>Defendants. | Case No. 3:25-cv-06905-EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HYTTO PTE. LTD., (D/B/A) “LOVENSE”’S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date: December 3, 2026<br>Time: 1:30 p.m.<br>Location: Phillip Burton Federal Building<br>450 Golden Gate Avenue<br>Courtroom 5, 17th Floor<br>San Francisco, CA 94102 |

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(a)(3)] ..... 3

III. STATEMENT OF FACTS ..... 3

A. The Complaint's Allegations ..... 3

B. The Terms and Conditions and International Arbitration Agreement That Govern This Dispute ..... 4

IV. ARGUMENT ..... 6

A. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards Governs the International Arbitration Provision Agreed to By Plaintiff as a Condition of Using Hytto's Products and Services ..... 6

B. The Parties Delegated All Gateway Issues of Arbitrability to the Arbitrator. ..... 8

C. In Any Event, Plaintiff's Claims Must Be Arbitrated ..... 9

1. Plaintiff Assented to the Arbitration Agreement ..... 10

2. The Claims Asserted in the Complaint Fall Within the Scope of the Agreement ..... 12

3. The Arbitration Agreement is Neither Procedurally Nor Substantively Unconscionable ..... 13

(a) Procedural Unconscionability ..... 14

(b) Substantive Unconscionability ..... 14

D. The FAA Preempts Any Interpretation of Civil Code § 1798.192 That Would Require Class Arbitration ..... 15

E. This Court Should Stay This Action Pending Arbitration ..... 16

V. CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Qarqani v. Chevron Corp.*,
8 F.4th 1018 (9th Cir. 2021) ........ 7

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83, 6 P.3d 669 (2000) ........ 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ........ 2, 10, 15, 16

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) ........ 11

*Balen v. Holland America Line, Inc.*,
583 F.3d 647 (2009) ........ 1, 6, 7

*Bautista v. Star Cruises*,
396 F.3d 1289 (11th Cir. 2005) ........ 7

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
794 F.3d 99 (D.C. Cir. 2015) ........ 8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 10

*Bielski v. Coinbase Inc.*,
87 F.4th 1003 (9th Cir. 2023) ........ 2, 13, 14

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........ 9

*Carter v. Rent-A-Center, Inc.*,
718 F. App'x 502 (9th Cir. 2017) ........ 3

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........ 12

*Coinbase, Inc. v. Suski*,
602 U.S. 143, 144 S. Ct. 1186, 218 L. Ed. 2d 615 (2024) ........ 10

*Coneff v. AT&T Corp.*,
673 F.3d 1155 (9th Cir. 2012) ........ 16

*Da Hua Non-Ferrous Metals Co. v. W.D. Mask Cotton Co.*,
113 F.3d 1234 (6th Cir. 1997) ........ 7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213, 105 S. Ct. 1238 .......... 10

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018) .......... 8

*First Options of Chi. Inc. v. Kaplan*,
514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 985 (1995) .......... 10

*Garcia v. Roblox Corp.*,
Case No. 2:25-v-03476-WLH-AJR, 2026 WL 413636 (C.D. Cal. Feb. 11. 2026) .......... 11, 12, 14

*Granite Rock Co. v. Int'l Broth. Of Teamsters*,
561 U.S. 287, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010) .......... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019) .......... 2, 8

*Hill v. G E Power Sys., Inc.*,
282 F.3d 343 (5th Cir. 2002) .......... 16

*In re Episource LLC Data Breach Litigation*,
Case No. 2:25-cv-05330-SB-MBK, 2026 WL 638864 (C.D. Cal. Jan. 20, 2026) .......... 1

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) .......... 3

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*,
141 F.3d 1434 .......... 6

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 2, 11, 12, 14

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
74 Cal. App. 4th 1105, 88 Cal. Rptr. 2d 664 (1999) .......... 14

*Lovig v. Best Buy Stores LP*,
No. 18-CV-02807-PJH, 2019 WL 2568851 (N.D. Cal. June 21, 2019) .......... 16

*Ministry of Def. of the Islamic Republic of Iran v. Gould Inc.*,
887 F.2d 1357 (9th Cir. 1989) .......... 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) .......... 6, 10, 12

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) .......... 1, 8

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013)........................................................................................9, 15

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111, 447 P.3d 680 (2019) ..................................................................................... 14

*Perry v. Thomas*,
482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) ........................................................... 7

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223, 282 P.3d 1217 (2012) ............................................................................ 13, 14

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
862 F.3d 981 (9th Cir. 2017)..........................................................................................9, 15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) ......................................................... 12

*Quiksilver Greater China Ltd. v. Quiksilver Glorious Sun Licensing Ltd.*,
No. SACV1201379CJCANX, 2012 WL 12878644 (C.D. Cal. Nov. 2, 2012)............................ 7

*Rent-A-Center West, Inc. v. Jackson*,
561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) ........................................................... 8

*Republic of Nicaragua v. Standard Fruit Co.*,
937 F.2d 469 (9th Cir. 1991)..................................................................................................... 7

*Sanchez v. Valencia Holding Co. LLC*,
61 Cal. 4th 899, 353 P.3d 741 (2015) ......................................................................... 13, 14, 16

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1 (2021)................................................................... 11

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999)................................................................................................... 12

*Ziober v. BLB Res., Inc.*,
839 F.3d 814 (9th Cir. 2016)................................................................................................... 16

**Statutes**

9 U.S.C. § 3 ............................................................................................................................. 16

9 U.S.C. § 4 ..........................................................................................................................1, 10

9 U.S.C. § 202 ........................................................................................................................ 6, 7

9 U.S.C. § 203 ............................................................................................................................. 6

9 U.S.C. § 206 ............................................................................................................................. 7

9 U.S.C. §§ 2, 202 .......... 7, 10

9 U.S.C. §§ 201-208 .......... 1, 6

Cal. Bus. & Prof. Code § 17200 .......... 4

Cal. Civ. Code § 1798.150 .......... 4

Cal. Civ. Code § 1798.100 .......... 4

Cal. Civ. Code § 1798.192 .......... 1, 15, 16

**Rules**

Fed. R. Civ. Proc. 12(b)(1) and (6), and 12(f) .......... 1

**Other Authorities**

Local Rule 7-4 .......... 1, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, Defendant Hytto Pte. Ltd (d/b/a "Lovense") ("Hytto" or "Defendant") brings this Motion to Compel Arbitration and Stay Proceedings with respect to the claims asserted by anonymous Plaintiff "Jane Doe" ("Plaintiff" or "Doe").[1]

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, on behalf of herself and others similarly situated, asserts five causes of action for alleged failures by Hytto to safeguard Plaintiff's personally identifiable information after she used Hytto's "Lovense" mobile application. (Cplt., ECF 1.)

Plaintiff expressly agreed to forgo participation in class or representative proceedings and to resolve "***all disputes***" through individual arbitration when she (i) registered an account with Hytto and consented to Hytto's Terms and Conditions and/or (ii) purchased products or services through Hytto's Lovense mobile application. Hytto's Terms and Conditions require Plaintiff to submit her claims to binding arbitration in Hong Kong (the "Arbitration Agreement"), in accordance with the Hong Kong International Arbitration Centre Administered Arbitration Rules ("HKIAC Rules"). The Terms and Conditions fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified in Chapter 2 of the Federal Arbitration Act. 9 U.S.C. §§ 201-208; *Balen v. Holland America Line*, *Inc.* 583 F.3d 647, 654-55 (2009). Like any

[1] Concurrent with this Motion to Compel Arbitration, Hytto has also moved, pursuant to Fed. R. Civ. Procedure 12(b)(1) and (6), and 12(f), to dismiss Plaintiff's claims and/or to strike the class action claims from the Complaint (the "Motion to Dismiss"). Whether the Court needs to determine the issues raised by this Motion to Compel Arbitration will therefore depend on whether the Court finds that it has subject matter jurisdiction in the first place. *See, e.g., In re Episource LLC Data Breach Litigation*, Case No. 2:25-cv-05330-SB-MBK, 2026 WL 638864, at *10 (C.D. Cal. Jan. 20, 2026)(holding that because claims of certain defendants "are dismissed for lack of Article III standing, the Court lacks jurisdiction to adjudicate a motion to compel them to arbitrate"); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), *superseded by statute on other grounds*, ("The [FAA] is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction. . . . [T]here must be diversity of citizenship or some other independent basis for federal jurisdiction.") Should the Court order this matter to arbitration as requested by this Motion, it need not reach the issues presented by Hytto's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. 12(b)(6).

domestic arbitration agreement, the Arbitration Agreement must be enforced according to its terms. This includes enforcing the delegation clause incorporated through the HKIAC Rules, which requires that the arbitrator, not the court, resolve any disputes regarding arbitrability, including the existence, scope, or validity of the Arbitration Agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68-69, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019). The Arbitration Agreement is valid and enforceable, and the Court should require that Plaintiff arbitrate her claims *and* any disputes regarding arbitrability.

Even if the Court were inclined to determine arbitrability, the agreement is nonetheless enforceable. The Arbitration Agreement includes disputes relating in any way to Plaintiff's use of Hytto's website or its mobile application, and encompasses any claims concerning Plaintiff's privacy and the company's policies, including its Privacy Policy—in other words, precisely the sort of claims asserted by Plaintiff here. Plaintiff received prominent and conspicuous notice of the requirement to arbitrate any claims arising from her use of Hytto's application, products, and services and affirmatively manifested her assent through a form of online agreement that courts of this circuit have repeatedly deemed sufficient to put the user on notice and have enforced. *See, e.g., Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). Thus, the Arbitration Agreement was not presented to Plaintiff through procedurally unconscionable "oppression or surprise." *Bielski v. Coinbase Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023).

Nor are the actual terms of the Arbitration Agreement substantively unconscionable: the HKIAC rules provide a fundamentally fair forum and procedures for adjudication of Plaintiff's claims. The HKIAC rules specifically delegate to the arbitrator the power to determine the scope and validity of the Arbitration Agreement, as well as the tribunal's own jurisdiction. Moreover, none of the remedies that Plaintiff seeks are unavailable to her in arbitration.

Lastly, Plaintiff expressly agreed to arbitrate her claims on an individual basis and expressly waived her right to participate in class or representative proceedings. The United States Supreme Court has explicitly upheld such class waiver provisions in arbitration agreements as being consistent with the intent and purposes of the FAA—and held that any contrary attempt by California to impose different requirements is preempted by federal law. *AT&T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011); *Carter v. Rent-A-Center, Inc*., 718 F. App'x 502, 504 (9th Cir. 2017)); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.,* 298 F. Supp. 3d 1285, 1303 (N.D. Cal. 2018).

Accordingly, Plaintiff's claims should be compelled to arbitration on an individual basis.

## II. STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(a)(3)]

The following issues are raised by this motion:

1. Whether the Convention on the Recognition and Enforcement of Foreign Arbitral Awards governs the Arbitration Agreement contained in Hytto's Terms and Conditions.

2. Whether the parties delegated issues concerning arbitrability to the arbitrator.

3. Whether the parties have a valid agreement to arbitrate that covers the current dispute. The Court does not need to address this issue if it decides that the parties delegated issues concerning arbitrability to the arbitrator.

4. Whether to stay this action pending arbitration.

## III. STATEMENT OF FACTS

### A. The Complaint's Allegations

Hytto is a company that designs, manufactures, and sells adult products. (Declaration of Hequan Cen, dated August 26, 2026 ("Cen Decl."), ¶ 2.) Lovense is renowned for designing, manufacturing, and bringing to market a suite of high-tech, remotely controlled adult products. (*Id.*)

Plaintiff alleges that she has maintained an active Hytto account since February 2024, and she purports to bring her claims individually and on behalf of a class of similarly situated individuals. (Cplt., ¶¶ 1-2.) Plaintiff alleges that Hytto's clients and customers, including Plaintiff, trusted that their Personally Identifiable Information ("PII") would be maintained in a secure manner and kept from unauthorized disclosure to third parties as outlined in Hytto's Privacy Policy Page. (*Id.*, ¶ 3.)

Plaintiff further alleges that, in or about July 2025, several reports confirmed that Hytto's systems contained security flaws that allowed any user to obtain another user's email address and take over another user's account without their knowledge or consent. (*Id.* ¶¶, 1, 5.) However,

those reports do not state that Plaintiff's email address or account or those of any or all customers were actually ever breached or accessed other than as a means to expose the flaws. Nonetheless, Plaintiff claims conclusorily, with no supporting detail, that due to the vulnerabilities identified in the Lovense application, her PII was exposed to unauthorized third parties, creating substantial risks of financial fraud, harassment, blackmail, and the public disclosure of private, intimate matters. (Cplt., ¶ 5.) Plaintiff alleges that Hytto had knowledge of these vulnerabilities on or about March 26, 2025, yet failed to immediately fully remedy the flaws. (*Id.*, ¶ 6.)

Plaintiff asserts that after public disclosure of the two security flaws on or about July 29, 2025 Hytto implemented a patch within 48 hours for the Data Breach which the reports indicated fully resolved the issues. (*Id.*) She alleges in a conclusory fashion with no specific details that Hytto failed to maintain proper measures to detect hacking and intrusion and did not maintain reasonable security measures. Plaintiff, on behalf of herself and others similarly situated, asserts claims under the California Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.150); the California Privacy Rights Act ("CPRA"), Civ. Code § 1798.100 *et seq.*; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and for negligence and negligence per se.

### B. The Terms and Conditions and International Arbitration Agreement That Govern This Dispute

In order for a consumer to use the Lovense application, they must first register and create an account with the company, either through Hytto's web page or the application. (Cen Decl. ¶¶ 4-9.) On the account creation ("Sign Up") page, it is noted—directly and conspicuously under the sign-up button—that "By tapping Sign Up, you agree to our Privacy Policy, Terms & Conditions, and End User License Agreement, with each term highlighted and hyperlinked to the corresponding document. (*Id.*) Lovense users must agree to the company's Privacy Policy, Terms & Conditions, and End User License Agreement before they can register an account. (*Id.*)

Users who purchase Hytto products from the Lovense website need to complete the purchase at the "Checkout" page. (*Id.*) On the Checkout page, in both its 2024 and current versions, users are presented with a conspicuous checkbox to affirm their agreement to the

Lovense Terms and Conditions in order to execute the purchase. (*Id.*, ¶¶ 10-13.)

The preamble for the Terms and Conditions that were in effect when Plaintiff allegedly opened her account prominently featured offset block letters notifying customers that any disputes relating to Hytto's products and services would be subject to arbitration and that the customer agreed to waive all rights to representative and class actions. (Cen Decl., ¶¶ 14-16.) The current version of the preamble to the Terms and Conditions also contains large block letters conspicuously informing the user that any disputes are subject to arbitration and that they waive any right to participate in representative or class actions. (*Id.*, ¶ 19.)[2]

The linked Terms and Conditions also contain a section entitled "GOVERNING LAW AND DISPUTE RESOLUTION, WAIVER OF LITIGATION PROCEEDINGS" in block letters. (*Id.*, ¶ 17.) That section requires arbitration in Hong Kong, the principal location of Hytto's affiliate, Hytto Limited (the "Arbitration Agreement"). (*Id.*) The Arbitration Agreement expressly applies to "all Disputes" between Hytto and the customer. (*Id.*) "Disputes" include, without limitation, "any claims or controversies between [the user] and Lovense that are related in any way to these Terms and Conditions, including but not limited to . . . . policies, privacy . . . and/or any communications between [the user] and Lovense, whether occurring on this website, in the mobile application, or in-store." (*Id.*)

The 2024 Arbitration Agreement reiterates in this section, in all capital letters, a prominent waiver of class and consolidated actions:

> c. Waiver of Class or Consolidated Actions. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

---

[2] The Complaint does not plead facts indicating on which particular day in February 2024 Plaintiff specifically created her account, or on which days she used the Lovense application, or when she interacted with the Hytto website. Although Hytto amended the Terms and Conditions applicable to all users effective as of October 10, 2024, after Plaintiff had allegedly already created an account, that version of the Terms and Conditions and the Arbitration Agreement is substantially the same as the versions effective as of January 9, 2024 and February 5, 2024, and does not change the analysis here. (Cen Decl., Exs. A, B, & C.)

(*Id.*, ¶ 17.)

Likewise, the current version of the Arbitration Agreement notifies the user in the "Governing Law and Dispute Resolution" section, in equally prominent, capitalized font, that they are waiving rights to participate in any class or representative proceeding:

> 10.4 Class Action and Jury Trial Waiver. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ALL DISPUTES SHALL BE RESOLVED ON AN INDIVIDUAL BASIS ONLY. EACH PARTY WAIVES ANY RIGHT TO A CLASS, COLLECTIVE, CONSOLIDATED, REPRESENTATIVE, OR MASS PROCEEDING, AND ANY RIGHT TO A JURY TRIAL.

(Cen Decl., ¶ 20.)

## IV. ARGUMENT

### A. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards Governs the International Arbitration Provision Agreed to By Plaintiff as a Condition of Using Hytto's Products and Services

In 1970, the United States ratified the international treaty known as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). 9 U.S.C. §§ 201–208. The Convention's purposes are to "encourage the recognition and enforcement of international arbitral awards" and "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that [is] speedier and less costly than litigation." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440, *overruled on other grounds by Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.,* 66F.4th 876 (11th Cir. 2023) (11th Cir. 1998) (citations omitted). Indeed, the strong federal policy favoring arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985); *see also Balen v. Holland America Line, Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (same, quoting *Mitsubishi Motors Corp.*).

The Convention is applicable to arbitration agreements "arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement." 9 U.S.C. § 202. District courts have original jurisdiction over disputes falling under the Convention and the FAA, 9 U.S.C. § 203, and are empowered to "direct that arbitration

be held in accordance with the [parties'] agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. To that end, "[o]nce a court determines that a valid arbitration agreement exists and that it applies to the parties' dispute, the inquiry ends and the court must direct the parties to arbitrate." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) (reversing and remanding to district court to enter an order enforcing international arbitration provision) (quoting *Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987)).

"Courts generally address four factors to determine whether to enforce an arbitration agreement under the Convention." *Balen*, 583. F.3d at 654-655 (citing *Bautista v. Star Cruises,* 396 F.3d 1289, 1294-95 (11th Cir. 2005). "These four require that (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.* (quoting *Bautista*, 396 F.3d at 1294, n. 7).

Here, the Arbitration Agreement included in Hytto's Terms and Conditions and Privacy Agreement meets all four requirements. The first requirement is satisfied because the Terms and Conditions and Privacy Agreement accepted by Plaintiff contain an agreement to arbitrate. 9 U.S.C. §§ 2, 202. The second requirement is satisfied because the agreements call "for arbitration in Hong Kong, a signatory to the Convention." *Quiksilver Greater China Ltd. v. Quiksilver Glorious Sun Licensing Ltd.*, No. SACV1201379CJCANX, 2012 WL 12878644, at *3 (C.D. Cal. Nov. 2, 2012); *see also Da Hua Non-Ferrous Metals Co. v. W.D. Mask Cotton Co.*, 113 F.3d 1234 (6th Cir. 1997) (enforcing international arbitration agreement, including because Hong Kong is a signatory to the Convention). The third requirement is satisfied because Plaintiff's use of Hytto's application and/or website for products and services comprises a "commercial" relationship within the meaning of 9 U.S.C. § 202. *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1024 (9th Cir. 2021) ("Under 9 U.S.C. § 202, an arbitration award 'falls under the Convention' if it is one 'arising out of a legal relationship, whether contractual or not, which is considered as

commercial, including a transaction, contract, or [arbitration] agreement.'"), quoting *Ministry of Def. of the Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 104-105 (D.C. Cir. 2015) (under the Convention, as codified in the FAA, the term "commercial" signals legislative intent to encompass "broadest permissible exercise of Congress' Commerce Clause power"). Finally, the fourth requirement is met because Hytto is not an American citizen, but rather is headquartered in Singapore with affiliated operations in Hong Kong. (Cen Decl., ¶¶ 2, 17.)

As the Supreme Court has recently and repeatedly reaffirmed, "[n]ot only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Granite Rock Co. v. Int'l Broth. Of* Teamsters, 561 U.S. 287, 298, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010); *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25 (the FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements").

The Court should order the parties to arbitrate their disputes pursuant to the terms of the Arbitration Provision.

**B. The Parties Delegated All Gateway Issues of Arbitrability to the Arbitrator.**

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 586 U.S. at 67-68 (quoting *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)). Such threshold questions of arbitration may be delegated to the arbitrator through "clear and unmistakable" evidence. *Id*. at 530. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Id*. at 529. "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id*.

The Ninth Circuit has repeatedly held that incorporation of arbitral rules which provide the arbitrator with authority to decide their own jurisdiction constitutes clear and unmistakable

evidence that the parties intended to delegate questions of arbitrability to the arbitrator. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1073-75 (9th Cir. 2013) (enforcing delegation clause incorporated through United Nations Commission on International Trade Law arbitration rules, which vest the arbitrator with "the authority to decide [their] own jurisdiction"); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (enforcing delegation clause incorporated through International Chamber of Commerce arbitral rules which provided the arbitrator with authority to decide any issues "concerning the existence, validity or scope of the arbitration agreement"); *Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015) (enforcing delegation provision through American Arbitration Association Rules, which provided that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the ... validity of the arbitration agreement").

The parties effected the same type of delegation clause here. The Arbitration Provision contained in the January 11, 2024 and February 5, 2024 Terms and Conditions requires that any disputes "be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre (HKIAC) under the HKIC Administered Arbitration Rules [the "HKIAC Rules"] in force when the Notice of Arbitration is submitted. The applicable law of this arbitration clause shall be Hong Kong law." (Cen Decl., Ex. A, §12(a); Ex. B, § 12(a).) The HKIAC Rules include a classic delegation provision:

> The arbitral tribunal may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement

RJN, Ex. 1, Article 19.1; s*ee also id*., Article 19.2-5. This delegation clause is the same as those the Ninth Circuit previously enforced in *Oracle America*, *Portland General Electric*, and *Brennan*, and it is a "clear and unmistakable" agreement that the arbitrator should decide all issues concerning the validity, scope, and existence of the arbitration agreement. The Court's arbitrability inquiry should end here.

**C. In Any Event, Plaintiff's Claims Must Be Arbitrated**

Even if the Court, not an arbitrator, were to decide threshold issues of arbitrability, the result would be the same: arbitration. Arbitration must be ordered unless the Arbitration

Agreement is "null and void, inoperative or incapable of being performed." *Mitsubishi Motors Corp.*, 473 U.S. at 619 n.3 (citing Convention, Article II(3)). The FAA reflects a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC*, 563 U.S. at 339. As with any contract, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147-48, 144 S. Ct. 1186, 218 L. Ed. 2d 615 (2024) (quoting 9 U.S.C. § 2.) On a motion to compel arbitration, the court determines what the parties have consented to arbitrate and order the parties to proceed to arbitration on any issues which they have validly agreed to arbitrate. *Coinbase, Inc.*, 602 U.S. at 148; 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-218, 105 S. Ct. 1238, 84. L. Ed. 2d 158 (1985).

The Arbitration Agreement covers precisely the sort of claims presented by Plaintiff in this action and is valid and enforceable: Plaintiff assented to the arbitration clause, and is therefore bound by its terms; the claim asserted fall within the Arbitration Agreement's provisions; and the Arbitration Agreement is enforceable and not unconscionable.

**1. Plaintiff Assented to the Arbitration Agreement**

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 985 (1995)). To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-513 (9th Cir. 2023).

California and federal courts regularly uphold arbitration agreements contained in online Terms & Conditions like the Arbitration Agreement, where such agreements are presented via sign-up and subsequent log-ins or purchases. Hytto's Arbitration Agreement was presented through a form of online agreement known as a "sign-in wrap" agreement, which falls between a "clickwrap" and "browsewrap" agreement. *See Oberstein*, 60 F.4th at 513 (explaining the difference in enforceability between clickwrap and browsewrap agreements). A "sign-in wrap"

agreement is one "where users are required to advance through a sign-in screen which states, "By clicking Sign Up" (or in some cases "By clicking Continue") 'I agree to the Terms of [Use including the arbitration clause.]'" *Keebaugh*, 100 F.4th at 1014; *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463-464, 289 Cal. Rptr. 3d 1 (2021).

Under California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Keebaugh,* 100 Fed.4th at 1014. The court must also evaluate the "full context of the transaction" to determine whether "a given textual notice is sufficient to put an internet consumer on inquiry notice of contractual terms" and whether the transaction "contemplates entering into a continuing, forward-looking relationship." *Garcia v. Roblox Corp.*, Case No. 2:25-v-03476-WLH-AJR, 2026 WL 413636, at *4 (C.D. Cal. Feb. 11. 2026), *reconsideration denied*, No. 2:25-CV-03476-WLH-AJR, 2026 WL 928621 (C.D. Cal. Apr. 2, 2026) (*citing Sellers,* 73 Cal. App. 5th at 477); *see also Keebaugh,* 100 F. 4th at 1011-12, 1020-21.

Here, prospective Hytto customers must first create an account with a "Sign-Up" button – below which the sign-up screen conspicuously notes that "By tapping Sign Up, you agree to our Privacy Policy, Terms & Conditions and End User License Agreement," each of which is highlighted and hyperlinked to the corresponding document. (Cen Decl., ¶¶ 5-15.) In order to make any subsequent purchases, the Hytto customer must proceed through the "Check Out" page, which again presents these policies: the page contains links to the policies and a checkbox indicating the user's agreement to the Privacy Policy and Terms and Conditions, providing further notice of the terms to which the user agreed at sign up, and the user must affirm their assent to them in order to execute the purchases. (*Id.*) "The hyperlink to the terms of use and arbitration clause makes [the] terms easily available . . . [a]nd the 'clear and unequivocal reference to the extrinsic document and the contemporaneous availability of its terms shows that, at the time of contracting, the parties consented to those terms.'" *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 952-53 (2022) (internal citation omitted).

Although Plaintiff does not explicitly allege that she downloaded Hytto's mobile application to use with its products, she does allege that her personally identifiable information was exposed to unauthorized third parties because of vulnerabilities in the application. (Cplt., ¶¶ 5, 27.) Plaintiff's allegation that her injuries stem from Hytto's mobile application compel the conclusion that she downloaded and used the application, and contemplated a "continuing" relationship with Hytto's products and services, such that she had access to, and was on notice of the Terms & Conditions. *See Garcia v. Roblox Corp.*, 2026 WL 413636, at *4-5; *Keebaugh,* 100 F.4th at 1020-21 ("When downloading an app to one's own device, the prudent internet user necessarily anticipates ongoing access to that app at the user's discretion.")

Given the totality of the facts relating to the steps Plaintiff necessarily took to create an account and interact with Hytto's services, there can be no doubt that she received conspicuous notice of the Terms and Conditions, including the Arbitration Agreement, and voluntarily accepted them. Thus, the Arbitration Agreement is valid and binding.

**2. The Claims Asserted in the Complaint Fall Within the Scope of the Agreement**

The Arbitration Agreement encompasses "any claims or controversies between [Plaintiff] and Lovense that are related in any way to [the] Terms and Conditions." (Cen Decl., Ex. A, §12(a) & Ex. B. §12(a).) Such phrasing amounts to an enforceable, "broad arbitration clause." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (arbitration provisions that encompass all disputes "arising out of or relating to" the parties' agreement are "broad and far reaching."). Likewise, arbitration clauses that use phrases such as "arising in connection with the Agreement" are broadly construed. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Because of the parties' broad agreement to arbitrate Disputes arising from use of Hytto's products and service, "[t]o require arbitration, [Plaintiffs'] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Id.* (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 624 n.13). Here, Plaintiff's claims do not merely "touch" the parties' agreements—they

are completely intertwined with and originate from them.

Plaintiff alleges that she and others entrusted their PII to Hytto to maintain it in a "secure manner" without "unauthorized disclosure to third parties as outlined" in the company's "Privacy Policy page." (Cplt., ¶ 3.) The February 5, 2024 Terms and Conditions binds all users of the Hytto website and user of the Lovense application, and the company's respective products and services. The Terms and Conditions also establish that it is a "legally binding contract between [the user] and Hytto." (Cen Decl., Ex. A (preamble); Ex. B (preamble).) The Terms and Conditions further incorporate Hytto's Privacy Policy, to which Plaintiff also necessarily agreed to be bound. (*Id.*) Lastly, the Arbitration Agreement broadly makes clear that it applies to "all 'Disputes,'" which include "*any* claims or controversies between [the user] and Lovense that related in any way to these Terms and Conditions, including but not limited to . . . use of [Hytto's] website, sales, returns, refunds, cancellations, defects, *policies, privacy . . . whether occurring on this website, in the mobile application, or in-store*, even if the Dispute arises after the termination of [the user's] relationship with Lovense." (*Id.*, Ex. A, § 12(a), Ex. B, § 12(a) (emphasis added.)) Thus, the Terms and Conditions governing Hytto's products and services make clear that any disputes about all aspects of a user's interaction with and use of Hytto's platform—including claims regarding privacy under the CCPA, CPRA, and UCL—will be arbitrated. Plaintiff's claims are no exception.

### 3. The Arbitration Agreement is Neither Procedurally Nor Substantively Unconscionable

As Plaintiff now tries to avoid the Arbitration Agreement, she bears the burden of proving any defense to enforcement, such as unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247, 282 P.3d 1217 (2012). She will not be able to do so. Unconscionability "is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *Bielski*, 87 F.4th at 1013 (internal citation omitted). For a court to refuse to enforce a provision due to unconscionability, a party must show the provision has elements of *both* procedural and substantive unconscionability. *Sanchez v. Valencia Holding Co. LLC*, 61 Cal. 4th 899, 910-911, 353 P.3d 741 (2015). Courts

analyze unconscionability on a sliding scale: “the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa.” *Id.* at 910, quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 6 P.3d 669 (2000).

**(a) Procedural Unconscionability**

Under California law, procedural unconscionability focuses on contract formation and “oppression or surprise due to unequal bargaining power.” *Pinnacle Museum Tower Assn.,* 55 Cal. 4th at 246. Courts have frequently held that standard online contracts, constructed and presented to consumers in the same manner as Hytto’s Terms and Conditions, do not render such agreements or their included arbitration provisions procedurally unconscionable, even if they are “adhesion” contracts presented on a “take it or leave it” basis. *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127, 88 Cal. Rptr. 2d 664 (1999) (an arbitration agreement is “not rendered unenforceable just because it is . . . offered on a ‘take it or leave it’ basis.”)

As discussed above, Plaintiff received conspicuous notice of the fact that by clicking “Sign Up” and “I Agree to the Privacy Policy and Terms and Conditions” would bind her to the arbitration provisions contained in the Terms and Conditions. The Arbitration Agreement is not hidden in the Terms and Conditions; it is written in plain language, readily found, and presented in legible font. *Bielski*, 87 F.4th at 1014. The Terms and Conditions agreement also prominently and boldly confirms in the preamble that by using Hytto’s products and services, Plaintiff was agreeing to be bound by arbitration. “That does not stink of oppression or surprise.” *Garcia*, 2026 WL 413636, at * 7; *Keebaugh*, 100 F.4th at 1012.

**(b) Substantive Unconscionability**

Substantive unconscionability relates “to the fairness of an agreement’s actual terms” (*Bielski*, 87 F.4th at 1014 (*quoting Pinnacle Museum Tower Assn.*, 55 Cal. 4th at 246), and contractual terms that are “overly harsh,” “unduly oppressive,” or “unfairly one-sided.” *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 129-130, 447 P.3d 680 (2019) (collecting cases.)

The HKIAC rules are well-established and provide a fundamentally fair forum and fair procedures for adjudication of Plaintiff's claims. Hytto's affiliate has business operations in Hong Kong, making arbitration in Hong Kong reasonable—and nothing in the HKIAC rules prevents remote attendance at the arbitration hearing. By signing up to use Hytto's products and services, Plaintiff acknowledged and agreed that "the governing law of the [Terms and Conditions] Agreement" would be the law of the Hong Kong Special Administrative Region, without regard to principles of conflict of laws. (Cen Decl., Exs. A& B, § 12(b).) As noted above, the HKIAC Rules specifically delegate to the arbitrator the power to determine the scope and validity of the Arbitration Agreement, including choice of law, and its own jurisdiction. (RJN, Ex. 1, Art. 19.) This delegation is, itself, not unconscionable. *See*, *e.g., Oracle Am., Inc.*, 724 F.3d at 1073-75; *Portland Gen. Elec. Co.*, 862 F.3d at 985. Additionally, the HKIAC Rules also provide flexibility for the parties to determine the methodology for payment of the fees and expenses of arbitration, with review by the tribunal to insure fairness. (RJN, Ex. 1, Art. 10.)

### D. The FAA Preempts Any Interpretation of Civil Code § 1798.192 That Would Require Class Arbitration

Plaintiff alleges that "the CCPA explicitly authorizes private litigants to bring individual or class action claims," citing to CCPA §1798.192, which provides that "[a]ny provision of a contract or agreement of any kind, including a representative action waiver, that purports to waive or limit" rights under the CCPA "shall be deemed contrary to public policy and shall be void and unenforceable. *See* Cplt., ¶ 9, n. 5. However, as noted above, the Arbitration Agreement that Plaintiff voluntarily accepted when she agreed to Hytto's Terms and Conditions in connection with her use and/or purchase of Hytto products prominently required her to acknowledge and agree that she would forgo class or representative actions as a condition of using Hytto's platform and application. The validity of the class waiver clause is for the arbitrator to decide in the first instance. But even if this Court were to consider this "gateway" issue, such provisions are preempted by the FAA.

In *AT&T Mobility LLC v. Concepcion*, the Supreme Court held that California's *Discover Bank* rule, which held certain class action waivers in consumer contracts unconscionable and

unenforceable under California law, was preempted by the FAA because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 563 U.S. 333, 344 (2011).

The California legislature's attempt to circumvent federal law, as embodied by the class waiver prohibition in CCPA §1798.192, is contrary to *Concepcion* and its progeny, and plainly preempted by the FAA to the extent the statute is interpreted to *require* class arbitration. Section 1798.192 protects substantive CCPA rights; it does not create a right to a judicial forum or class procedures, and Plaintiff retains the opportunity to seek all substantive CCPA remedies in arbitration. *See also Sanchez*, 61 Cal. 4th at 923-924 (holding that the FAA preempted the California Consumer legal Remedies Act's anti-class action waiver provision insofar as it barred class waivers in arbitration agreements covered by the FAA); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1157-61 (9th Cir. 2012) (holding that the FAA preempted Washington state law invalidating a class action waiver).

**E. This Court Should Stay This Action Pending Arbitration**

Under Section 3 of the FAA, if "any issue" is referred to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 817 (9th Cir. 2016) ("Section 3 of the FAA specifically directs federal district courts to stay proceedings" when arbitration is ordered). As described above, Plaintiffs' claims are subject to arbitration. The Court should stay this action pending the outcome of the arbitration.

In the alternative, if this Court were to find that some claims are arbitrable while others are not, the Court should compel arbitration of the arbitrable claims and stay any remaining claims pending resolution of the arbitration. A stay is justified for non-arbitrable claims that depend on the same facts and are inherently inseparable from the arbitrable claims. *See, e.g.*, *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 348 (5th Cir. 2002) (where arbitrable and non-arbitrable claims were "inseparable," staying non-arbitrable claims pending resolution of arbitrable claims); *Lovig v. Best Buy Stores LP*, No. 18-CV-02807-PJH, 2019 WL 2568851, at *3 (N.D. Cal. June 21, 2019) ("Because this action raises claims both subject to arbitration and not subject to arbitration, 9 U.S.C. § 3 dictates

that it must be stayed pending arbitration").

Here, the outcome of the arbitration will necessarily impact all claims asserted in the Complaint against Hytto. All claims depend on interpretation and application of the Terms and Conditions and Privacy Agreement—and common facts related to each of them—and cannot be separated from one another. Any non-arbitrable claims should be severed and stayed pending arbitration.

## V. <u>CONCLUSION</u>

The Arbitration Agreement entered into by Plaintiff and Hytto as a condition of using the Lovense application, products, and services is valid and enforceable. Hytto respectfully requests that the Court enter an Order to compel arbitration of Plaintiff's claims and stay all further proceedings in this action until the arbitration is concluded.

Dated: August 26, 2026 RIMON, P.C.

By: */s/ Scott Raber*

Scott Raber (SBN 194924)
RIMON, P.C.
545 Middlefield Road, Suite 250
Menlo Park, CA 94025
Telephone: (415) 693-9208
scott.raber@rimonlaw.com

Michael S. Lazaroff (*Pro Hac Vice* application pending)
RIMÔN P.C.
400 Madison Avenue, Suite 11D
New York, NY 10017
Tel: (646) 738-4151
Fax: (212) 363-0270
michael.lazaroff@rimonlaw.com

Attorneys for Defendant
HYTTO PTE. LTD., (D/B/A) "LOVENSE"