**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Counsel for Plaintiff, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE, individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HYTTO PTE. LTD., (D/B/A) "LOVENSE", a Singaporean Private Limited Company; and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 3:25-cv-06905-EMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF CLAIMS ASSERTED BY PLAINTIFF**<br><br>Hearing Date: December 3, 2026<br>Hearing Time: 1:30 p.m.<br>Courtroom: 5 – 17th Floor<br><br>Hon. Edward M. Chen |

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................ 1

II. LEGAL STANDARD ........................................................ 3

III. ARGUMENT ........................................................ 4

A. Defendant Cannot Compel Arbitration Because Its Generalized Evidence Does Not Prove That This Plaintiff Received Notice of, and Assented to, the January 2024 Terms ........................................................ 4

1. *Chabolla* And *Godun* Require Defendant to Prove Both Conspicuous Notice and an Unambiguous Plaintiff Specific Manifestation of Assent ........................................................ 4

2. Cen Authenticates a Generic 2024 Signup Screen, Not Plaintiff's February Signup Transaction ........................................................ 6

3. Defendant Cannot Substitute Its Checkout Flow for Proof of Assent During Account Creation Because There Is No Evidence Plaintiff Used That Checkout Flow ........................................................ 7

4. The Record Identifies a January 9, 2024 Terms Document but Does Not Prove That Plaintiff Was Presented with or Assented to it ........................................................ 8

5. The October 10, 2024 Amendment Cannot Retroactively Establish Plaintiff's February Assent, And Defendant Has Not Shown Assent to the Amendment Itself ........................................................ 8

B. Neither the Convention Nor HKIAC Article 19 Permits Defendant to Delegate the Antecedent Question Whether Plaintiff Ever Formed an Arbitration Agreement ........................................................ 9

1. Formation Is for This Court Even When Arbitral Rules Delegate Questions Of Validity, Scope, And Arbitral Jurisdiction ........................................................ 9

2. The Convention May Govern a Valid Hong Kong Arbitration Agreement, But Defendant Still Must Prove the Convention's First Requirement: An Agreement Binding This Plaintiff ........................................................ 11

3. Judicial Notice of the HKIAC Rules Does Not Establish Assent to a Contract Incorporating Those Rules ........................................................ 12

C. Defendant's Remaining Enforceability Arguments Cannot Cure Nonformation and, to the Extent Reached, Present Additional Problems Under the Actual January Terms ........................................................ 12

1. If A Valid January Agreement Exists, Its Broad Scope Likely Reaches These Privacy Claims; That Does Not Prove the Agreement Exists ........................................................ 12

2. The Adhesive Consumer Setting Supplies Procedural

Unconscionability, While the Foreign Seat and Cost Structure Warrant Scrutiny, But Plaintiff's Strongest Objection Remains Formation ..... 13

3. Section 1798.192 Does Not Automatically Invalidate Bilateral Arbitration, But Defendant Cannot Use FAA Preemption to Erase Substantive Statutory Remedies or the January Terms' Own Class Waiver Consequence ..... 14

4. *McGill* Does Not Invalidate an Arbitration Agreement Merely Because Plaintiff Seeks Class Relief, But Defendant May Not Construe Its Waiver to Eliminate Genuinely Public Injunctive Relief in Every Forum ..... 15

D. Because Defendant Has Not Established an Issue Referable to Arbitration Under a Valid Agreement, Neither Compulsion Nor a Section 3 Stay Is Available ..... 16

IV. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Cases**

*Ahlstrom v. DHI Mortgage Co.*, 21 F.4th 631, 634–35 (9th Cir. 2021)........ 2, 11

*American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235–36 (2013) ........ 18

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011)........ 18

*Balen v. Holland America Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009)........ 3, 13, 14, 22

*Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)........ 4, 10

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012–15 (9th Cir. 2023)........ 17

*Blair v. Rent A Center, Inc.*, 928 F.3d 819, 822–31 (9th Cir. 2019)........ 19

*Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015)........ 12

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022)........ 3, 11

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154–60 (9th Cir. 2025) ........ passim

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)........ 15

*Coinbase, Inc. v. Suski*, 602 U.S. 143, 148–50 (2024)........ 11

*Dawson v. Target Corp.*, No. 25 4061, slip op. at 3–5 (9th Cir. Aug. 14, 2026) (mem.) ........ 21

*Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1208–10 (N.D. Cal. 2024)........ 14

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995) ........ 4, 11

*Garcia v. Roblox Corp.*, No. 2:25 cv 03476 WLH AJR, 2026 WL 413636, at *4–7 (C.D. Cal. Feb. 11, 2026), reconsideration denied, 2026 WL 928621 (C.D. Cal. Apr. 2, 2026)........ 7

*Godun v. JustAnswer LLC*, 135 F.4th 699, 704, 711–13 (9th Cir. 2025) ........ passim

*Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 299–301 (2010) . 4, 15

*Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79, 90–92 (2000) ........ 17

*Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667, 670–72 (9th Cir. 2021) ........ 3, 5, 21

*Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 680–89 (9th Cir. 2024)........ 13, 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–71 (2019)........ 12

*Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343, 347–48 (5th Cir. 2002) ........ 20

*Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535, 541–43 (9th Cir. 2021)........ 19

*Holley Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1001–02 (9th Cir. 2023) ........ 13

*Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023)........................................................ 1, 4

*Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)............ 4, 5, 6

*Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831–32 (9th Cir. 2022) ................................. passim

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–12 (9th Cir. 2005)............................................. 20

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951–52, 961–62, 393 P.3d 85 (2017) .......................... 19

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–79 (9th Cir. 2014)................................... 10

*Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 513–18 (9th Cir. 2023) .............. 5, 7, 8

*Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013),................ 12

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125–30, 447 P.3d 680 (2019)............................................. 16

*Portland General Electric Co. v. Liberty Mutual Insurance Co.*, 862 F.3d 981, 985 (9th Cir. 2017) .......................................................................................................................... 12

*Rent A Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010) ................................................ 12

*Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) ........................ 14

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910–11, 353 P.3d 741 (2015) ......... 16, 18

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) .................................................. 15

*Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024)............................................................................ 20

*White v. PayPal Holdings, Inc.*, No. 25 cv 04884 PCP, slip op. at 6–8 (N.D. Cal. Feb. 23, 2026).. 6

*Ziober v. BLB Resources, Inc.*, 839 F.3d 814, 817 (9th Cir. 2016)............................................... 20

**Statutes**

9 U.S.C. § 3 .................................................................................................................................. 16

9 U.S.C. § 4 .................................................................................................................................... 4

9 U.S.C. §§ 201–208 ....................................................................................................................... 11

California Civil Code § 1798.192 .................................................................................................. 15

Fed. R. Evid. 901(a) ......................................................................................................................... 6

Federal Rule of Evidence 201(b)(2)................................................................................................ 12

## I. INTRODUCTION

Federal law favors arbitration agreements that parties actually make. It does not permit a court to manufacture assent from a generalized screenshot, to infer a Plaintiff specific click from the mere existence of an account, or to delegate the antecedent question whether any agreement was formed in the first place. That is the dispositive defect in Defendant's Motion.

Plaintiff alleges that she has maintained a Lovense account since February 2024. Compl. ¶¶ 2, 25. Defendant therefore bears the burden of proving, by a preponderance of the evidence, that this Plaintiff received legally sufficient notice of contractual terms containing an arbitration provision and took an action that unambiguously manifested assent to those terms. *Godun v. JustAnswer LLC*, 135 F.4th 699, 704, 711–13 (9th Cir. 2025); *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). Defendant has not made that showing.

The Cen Declaration does not identify the date on which Plaintiff created her account. It does not identify any account record, registration log, device log, click record, IP log, confirmation email, database entry, or other business record establishing what Plaintiff saw or what action she took. Instead, Cen supplies a screenshot he describes only as the Lovense App signup page "as of 2024." Cen Decl. ¶ 5. That description spans an entire year. Cen never testifies that the depicted screen was continuously in production throughout February 2024, that it was the screen served to Plaintiff on her registration date, that Plaintiff tapped the depicted "Sign Up" button, or that the hyperlink on Plaintiff's device led to the January 9, 2024 Terms on the date she registered. The Ninth Circuit's newest online formation decisions make those missing predicates consequential, not technical. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154–60 (9th Cir. 2025); *Godun*, 135 F.4th at 711–13. In *Chabolla*, the parties agreed that representative screenshots sufficiently reproduced the pages the plaintiff actually saw. 129 F.4th at 1152 n.2. Here, there is no comparable Plaintiff specific foundation.

Defendant's checkout evidence is further removed. Cen states only that users who purchase through the website encounter a checkout process. Cen Decl. ¶¶ 10–13. Defendant identifies no allegation or evidence that Doe purchased anything through that checkout flow, much less that she checked the depicted agreement box. The Complaint alleges an account and injuries associated with

the Lovense platform; it does not establish a website checkout transaction by Plaintiff. Compl. ¶¶ 2, 21, 25–30. Evidence about what some purchaser would see at checkout cannot establish what Doe agreed to when creating an account months or years earlier.

The Terms evidence has a similar problem. Cen attaches one archive described as the Terms "as of January 11, 2024" and another "as of February 5, 2024," Cen Decl. ¶¶ 14–15, but both exhibits themselves state "Effective: January 9, 2024." Cen Decl. Exs. A, B. Thus, Defendant has not actually produced two independently effective January and February agreements. It has produced two archived copies of what appears to be the same January 9 Terms. That may help establish what Terms Defendant had posted near the relevant period; it does not establish that the hyperlink Plaintiff supposedly encountered presented those Terms to her or that she manifested assent to them.

The October 10, 2024 Terms do not fill the gap. They postdate Plaintiff's alleged February account creation by approximately eight months. Cen Decl. Ex. C. Those amended Terms themselves provide that material changes will be communicated through the app, website, email, or another reasonable means and that continued use after the effective date constitutes acceptance. *Id.* § 8. Yet Cen identifies no October 2024 notice delivered to Plaintiff and no postnotice act by Plaintiff from which assent to the amendment could be inferred. Defendant cannot establish February contract formation with October terms, then establish assent to October terms by assuming the very notice and conduct it has not proved.

Delegation does not rescue that evidentiary failure. The Ninth Circuit has squarely held that "parties cannot delegate issues of formation to the arbitrator." *Ahlstrom v. DHI Mortgage Co.*, 21 F.4th 631, 634–35 (9th Cir. 2021). If the parties never formed an arbitration agreement, there is no delegation agreement to enforce. *Id.*; *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). Article 19.1 of the HKIAC Rules may empower an arbitral tribunal to rule on objections concerning the "existence, validity or scope" of an arbitration agreement once parties have agreed to arbitration under those Rules. RJN Ex. 1, art. 19.1. It cannot prove that Doe ever entered the antecedent contract incorporating the Rules.

Nor does the Convention alter the sequence. Plaintiff does not dispute that Hong Kong is a Convention territory, that a commercial agreement with a Singapore entity can fall under Chapter 2

of the FAA, or that the Convention strongly favors enforcement of qualifying international arbitration agreements. But Defendant's own authority requires, as the first Convention element, "an agreement in writing within the meaning of the Convention." *Balen v. Holland America Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009). The Convention does not eliminate the first word in that formulation: agreement.

The Motion should therefore be denied. At minimum, if the Court determines that the present record raises rather than resolves a genuine factual dispute over what registration interface Plaintiff encountered and what she did, 9 U.S.C. § 4 requires resolution of that formation dispute before arbitration may be compelled. *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831–32 (9th Cir. 2022); *Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667, 670–72 (9th Cir. 2021). The answer is not to send formation to HKIAC. It is to decide formation here.

## II. LEGAL STANDARD

The party seeking arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Godun*, 135 F.4th 699, 704 (9th Cir. 2025); *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). The FAA's policy favoring arbitration applies to the enforcement and scope of agreements actually formed; it does not create a presumption that an agreement exists. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 299–301 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995).

Whether an arbitration contract was formed is determined under ordinary state contract principles. *Godun*, 135 F.4th at 704; *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). California law requires mutual assent. In the sign in wrap setting invoked by Defendant, formation through inquiry notice requires both "reasonably conspicuous notice" of the contractual terms and conduct that "unambiguously manifests" assent to those terms. *Chabolla*, 129 F.4th at 1154; *Godun*, 135 F.4th at 707–13; *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). The full context of a transaction may inform the first requirement, conspicuous notice; it cannot substitute for the second, an unambiguous manifestation of assent. *Godun*, 135 F.4th at 712–13.

Where formation turns on disputed material facts, courts apply the Rule 56 framework. *Knapke*, 38 F.4th at 831; *Hansen*, 1 F.4th at 670–72. Section 4 provides that when "the making of the arbitration agreement" is in issue, the Court must resolve that issue before ordering arbitration. 9 U.S.C. § 4. If genuine material disputes cannot be resolved on the papers, a trial on formation follows. *Knapke*, 38 F.4th at 831–32.

## III. ARGUMENT

### A. Defendant Cannot Compel Arbitration Because Its Generalized Evidence Does Not Prove That This Plaintiff Received Notice of, and Assented to, the January 2024 Terms

#### 1. *Chabolla* And *Godun* Require Defendant to Prove Both Conspicuous Notice and an Unambiguous Plaintiff Specific Manifestation of Assent

Defendant's formation argument rests on a correct legal premise but an unproven factual one. A properly presented sign in wrap can form a contract. *Keebaugh*, 100 F.4th at 1014–21; *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 513–18 (9th Cir. 2023). But saying that an interface could form a contract does not prove that Doe encountered that interface and took the assent creating action.

The Ninth Circuit now separates the inquiry into two distinct requirements. First, the interface must provide reasonably conspicuous notice, evaluated by its visual design and the context of the transaction. *Chabolla*, 129 F.4th at 1154–57; *Godun*, 135 F.4th at 707–11. Second, the consumer must take an action that unambiguously manifests assent, ordinarily after being expressly told what action will have contractual significance. *Chabolla*, 129 F.4th at 1157–60; *Godun*, 135 F.4th at 711–13.

Defendant's depicted 2024 signup screen, considered in isolation, contains language materially stronger than the defective advisals in *Godun*. It says: "By tapping Sign Up, you agree to our Privacy Policy, Terms & Conditions and End User License Agreement." Cen Decl. ¶¶ 5–6. That language expressly ties a particular action to assent, much as *Chabolla* recognized was sufficient in *Keebaugh*, where the screen said that tapping "Play" meant agreement to the Terms. *Chabolla*, 129 F.4th at 1159; *Keebaugh*, 100 F.4th at 1020. If the information were accurate, Plaintiff therefore need not and should not contend that the wording is categorically incapable of satisfying the second prong.

But Defendant has not shown that this was Plaintiff's screen or that Plaintiff tapped that button. All that is known is that, at some point, the website has such a banner. That distinction is precisely why *Chabolla*'s treatment of representative screenshots matters. There, ClassPass's marketing director testified that the submitted pages were in substantially the same form as those presented on the plaintiff's known registration date, and the parties agreed that the screenshots sufficiently represented the pages she had seen. *Chabolla*, 129 F.4th at 1152 n.2. Only under those circumstances could the court adjudicate notice from the screens as a legal question.

Cen does not provide comparable testimony. He says only that the image is a true and correct screenshot of the registration page "as of 2024." Cen Decl. ¶ 5. He does not say "throughout 2024," "during February 2024," "on Plaintiff's registration date," or even that the design was unchanged between January and October 2024. Nor does he identify Plaintiff's registration date from Defendant's records. The temporal foundation matters because Plaintiff alleges only that she has maintained an account "since February 2024." Compl. ¶¶ 2, 25.

A recent Northern District decision illustrates the distinction. In *White v. PayPal Holdings, Inc.*, No. 25 cv 04884 PCP, slip op. at 6–8 (N.D. Cal. Feb. 23, 2026), the court separately examined whether the defendant had competent evidence connecting particular users, signup methods, time periods, and historical screens; it denied arbitration as to users for whom that connection was inadequately established while proceeding to the notice analysis for users for whom it was established. The point is not that an original screenshot from the exact second of registration is invariably required. It is that the defendant must offer competent evidence establishing that the representative screen reliably corresponds to the user and relevant signup flow. Defendant's "as of 2024" testimony never makes that connection.

Defendant's reliance on the "full context" of Doe's asserted relationship with Lovense cannot fill the gap. Defendant argues that because Plaintiff alleges an active Lovense account and a vulnerability involving the Lovense application, the Court should infer that she downloaded and used the application and contemplated an ongoing relationship. Mot. Mem. at 11–12. Even granting that inference for purposes of argument, *Godun* has since made unmistakably clear that the

transactional context bears on notice, not on whether the consumer performed an assent creating act. *Godun*, 135 F.4th at 712–13. "Step two does not look to the context of the transaction." *Id.* at 713.

That materially limits Defendant's reliance on *Garcia v. Roblox Corp.*, No. 2:25 cv 03476 WLH AJR, 2026 WL 413636, at *4–7 (C.D. Cal. Feb. 11, 2026), reconsideration denied, 2026 WL 928621 (C.D. Cal. Apr. 2, 2026), and *Keebaugh*. Those authorities permit context to strengthen an otherwise supported inference of notice in an ongoing app relationship. They do not authorize a district court to infer the Plaintiff specific assent event itself merely because the plaintiff used an app. Published Ninth Circuit law controls that distinction. *Godun*, 135 F.4th at 712–13; *Chabolla*, 129 F.4th at 1157–60.

Nor does *Oberstein*, 60 F.4th at 505, carry Defendant across the evidentiary gap. *Oberstein* enforced notices repeatedly shown during account creation, sign in, and purchase and tied those notices to the users' actions. *Id.* at 515–18. The issue here precedes the legal sufficiency of Defendant's wording: Defendant has not demonstrated that Doe encountered the screen it asks this Court to analyze. *Chabolla* itself contrasted the *Oberstein* screens based on their precise placement in the user's actual transactional flow. 129 F.4th at 1156–57.

**2. Cen Authenticates a Generic 2024 Signup Screen, Not Plaintiff's February Signup Transaction**

Cen claims that his position gives him knowledge of Lovense app development and account registration. Cen Decl. ¶ 1. That may provide a threshold basis to authenticate a screenshot as an example of a Lovense screen. Fed. R. Evid. 901(a). But authentication of an exhibit as a genuine Lovense screenshot and proof that Plaintiff encountered it at the legally relevant time are different propositions.

Cen never identifies any record for Plaintiff. He supplies no signup timestamp. No user history. No software version associated with Plaintiff's account. No server record showing which interface was rendered. No evidence that the relevant app version could not be bypassed. No testimony that every user registering on every day of February 2024 necessarily encountered exactly the interface depicted at paragraph 5. And no testimony that Plaintiff herself selected the "Sign Up" control depicted there. Cen Decl. ¶¶ 4–9.

The omission is particularly material under *Chabolla*, which expressly noted that constructive notice can be decided from screenshots as a pure legal question "where the authenticity of screenshots is not subject to factual dispute," and relied on an agreed factual foundation that the screenshots sufficiently represented what the plaintiff saw. *Chabolla*, 129 F.4th at 1152 n.2 (quoting *Keebaugh*, 100 F.4th at 1015). Here the problem is not merely whether Exhibit imagery originated from Defendant. It is whether the screenshot represents Plaintiff's interface at all.

Defendant's burden cannot be reversed. Doe need not prove that Defendant used some unidentified different screen before Defendant first carries its burden to prove the agreement it seeks to enforce. *Godun*, 135 F.4th at 704.

**3. Defendant Cannot Substitute Its Checkout Flow for Proof of Assent During Account Creation Because There Is No Evidence Plaintiff Used That Checkout Flow**

The Motion repeatedly blends account registration with website checkout. The record does not permit that. Cen states that "[u]sers who purchase products from Lovense's website" proceed through a checkout process. Cen Decl. ¶ 10. He then provides checkout screenshots "as of 2024" and currently and describes a checkbox used in the "normal checkout process." *Id.* ¶¶ 11–13.

But Defendant offers no evidence that Doe purchased a product from Lovense's website. No order. No receipt. No transaction date. No customer record. No declaration testimony. And no Complaint allegation establishes that Doe bought anything through the depicted checkout. The Complaint states that Lovense products are sold through Defendant's website, Compl. ¶ 22, and that Plaintiff maintained a Lovense account, *id.* ¶ 25. Those allegations do not establish that she completed a website purchase.

Accordingly, the checkout checkbox cannot establish Doe's assent. *Chabolla* forbids constructing assent by combining notice from one page with conduct on another where the evidence does not establish that the user received both in the necessary sequence. 129 F.4th at 1157–58. Defendant's theory is weaker still because it has not shown Plaintiff encountered its checkout page at all.

**4. The Record Identifies a January 9, 2024 Terms Document but Does Not Prove That Plaintiff Was Presented with or Assented to it**

Defendant refers to January 11 and February 5 Terms. The exhibits warrant greater precision. Cen states that Exhibit A is an archived copy "as of January 11, 2024" and Exhibit B is an archived copy "as of February 5, 2024." Cen Decl. ¶¶ 14–15. Both documents, however, identify their effective date as January 9, 2024. Cen Decl. Exs. A, B. The record thus appears to contain two archive captures of the same January 9 Terms, not evidence that a new contractual version became effective February 5.

That narrows one issue but does not cure formation. Defendant still must establish that the Terms link appearing on the interface Plaintiff actually encountered led to that January 9 document and that Plaintiff performed the act Defendant defined as assent. The archive captures establish the existence and contents of a document on or near certain dates. They do not prove Plaintiff's interaction with it.

The January 9 Terms themselves reinforce why formation cannot be assumed merely because Defendant posted them. The preamble says use of the app constitutes acceptance, and Section 12 contains the Hong Kong arbitration provision. Cen Decl. Exs. A, B §§ 1, 12. But unilateral contractual prose cannot create its own assent. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–79 (9th Cir. 2014), and *Berman*, 30 F.4th at 855–60, require the website or app operator to establish notice and manifestation under ordinary contract law.

**5. The October 10, 2024 Amendment Cannot Retroactively Establish Plaintiff's February Assent, And Defendant Has Not Shown Assent to the Amendment Itself**

Exhibit C states an effective date of October 10, 2024. Cen Decl. ¶¶ 18–20 & Ex. C. It materially changes the dispute provisions. Among other things, it adds an informal resolution procedure, expressly states that proceedings are confidential, expands the waiver to class, collective, consolidated, representative, and mass proceedings, and contains a general severability provision. *Id.* Ex. C §§ 10.2–10.4, 12.

The January 9 Terms are materially different. Most notably, their Section 12(c) provides that if the class or consolidated action waiver is held invalid or unenforceable, "neither you nor we are

entitled to arbitration," and the dispute instead proceeds in court under subsection (d). Cen Decl. Exs. A, B § 12(c).

That contractual consequence cannot be silently replaced with the October agreement's general severability rule unless Defendant proves that the amendment became binding on Plaintiff. The October Terms themselves specify the mechanism: material amendments will be communicated through the app, website, email, or another reasonable means, and continued use after the effective date constitutes acceptance. Cen Decl. Ex. C § 8. But Cen does not testify that Defendant communicated the October amendment to Doe by any identified means. Nor does he identify postnotice conduct by Doe. An allegation that an account remained "active" does not establish receipt of a particular amendment notice and subsequent informed use sufficient to prove modification. Defendant therefore cannot rely on the current Terms to rewrite the agreement it says was formed in February.

### B. Neither the Convention Nor HKIAC Article 19 Permits Defendant to Delegate the Antecedent Question Whether Plaintiff Ever Formed an Arbitration Agreement

#### 1. Formation Is for This Court Even When Arbitral Rules Delegate Questions Of Validity, Scope, And Arbitral Jurisdiction

Defendant's delegation argument begins one step too late. The Supreme Court distinguishes the antecedent judicial question whether parties agreed to arbitrate from questions the parties may validly delegate once such an agreement exists. *First Options of Chicago, Inc.*, 514 U.S. at 943–45. More recently, *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148–50 (2024), reaffirmed that courts determine what the parties actually consented to arbitrate before enforcing an asserted delegation arrangement.

The Ninth Circuit is even more explicit: "parties cannot delegate issues of formation to the arbitrator." *Ahlstrom*, 21 F.4th at 635. There, a contract expressly purported to give an arbitrator exclusive authority over "formation," yet the Ninth Circuit held that the district court itself had to decide whether the agreement existed. *Id.* at 634–35. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022), subsequently distilled the sequence: first, the court resolves any challenge that an arbitration agreement was never formed; next, it resolves a challenge specifically

directed to delegation; only after both hurdles are cleared do delegated scope or enforceability issues go to the arbitrator.

That rule disposes of Defendant's reliance on *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–71 (2019). *Henry Schein* rejected a judicially created "wholly groundless" exception after parties had agreed to delegate arbitrability. It did not hold that a tribunal may manufacture the contractual consent from which its authority must derive. *Id.* Similarly, *Rent A Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010), concerns the severability and enforceability of a delegation provision in an arbitration agreement the employee signed; it does not eliminate judicial adjudication of whether any agreement was formed.

The same distinction disposes of *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013), *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015), and *Portland General Electric Co. v. Liberty Mutual Insurance Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Those decisions establish an important but narrower proposition that Plaintiff does not dispute: incorporation of institutional rules authorizing an arbitrator to decide arbitral jurisdiction can constitute clear and unmistakable delegation where a binding agreement incorporating those rules exists. They do not authorize incorporated rules to bootstrap their own contractual formation.

HKIAC Article 19 therefore does not answer the present question. Article 19.1 states that "[t]he arbitral tribunal may rule on its own jurisdiction," including objections concerning "the existence, validity or scope of the arbitration agreement." RJN Ex. 1, art. 19.1. Article 19.5 similarly permits HKIAC to proceed provisionally where it is satisfied prima facie that an arbitration agreement "may exist." *Id.* art. 19.5. Those are rules governing an arbitration to which parties have agreed. Under *Ahlstrom*, they cannot deprive an Article III court of its obligation to decide whether Doe ever agreed to incorporate the HKIAC Rules.

Plaintiff likewise recognizes the specific challenge rule of *Holley Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1001–02 (9th Cir. 2023). A challenge to the validity of delegation must be directed to delegation itself. But that principle does not transform a formation dispute into a validity dispute. The challenge here is logically anterior: Defendant never proved Plaintiff formed the contract containing Section 12, and thus never proved an agreement incorporating Article 19. If the

Court nevertheless reaches validity of delegation, Plaintiff specifically challenges requiring a California consumer to invoke a Hong Kong seated arbitral process, including its advance cost mechanism, merely to adjudicate whether she ever agreed to arbitrate at all. Under *Heckman*, 120 F.4th at 680–83, the Court may consider the procedural framework surrounding a delegation clause when adjudicating a delegation specific unconscionability challenge.

**2. The Convention May Govern a Valid Hong Kong Arbitration Agreement, But Defendant Still Must Prove the Convention's First Requirement: An Agreement Binding This Plaintiff**

Plaintiff does not advance the untenable proposition that the Convention is categorically inapplicable because she is a California consumer. Defendant is a Singaporean entity, the clause designates Hong Kong as the seat, and a consumer relationship involving products and services can be commercial within 9 U.S.C. § 202. If Defendant proves a qualifying written agreement binding Doe, Chapter 2 of the FAA may govern. 9 U.S.C. §§ 201–208.

But that conditional matters. *Balen v. Holland America Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009), identifies four prerequisites: an agreement in writing within the meaning of the Convention; arbitration in the territory of a Convention signatory; a commercial legal relationship; and the requisite foreign nexus. Defendant can likely satisfy the second, third, and fourth predicates if there is a contract. Its Motion fails at the first because its assertion that the Terms were "accepted by Plaintiff" merely assumes the disputed conclusion. Mot. Mem. at 7.

Indeed, Defendant's own authority states the correct sequence: "[o]nce a court determines that a valid arbitration agreement exists and that it applies to the parties' dispute," arbitration must follow. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) (emphasis added). The Convention's strong enforcement policy is therefore not a substitute for formation. It is the consequence of formation.

Plaintiff also recognizes that Article II(3)'s "null and void, inoperative or incapable of being performed" defense is construed narrowly in Convention cases. See *Balen*, 583 F.3d at 654–55; *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1208–10 (N.D. Cal. 2024). That limitation makes it all the more important not to misclassify nonformation as a merits defense to an otherwise existing Convention agreement. Plaintiff's principal position is not that an international

arbitration contract should be invalidated. It is that Defendant has not proven that Plaintiff made one.

**3. Judicial Notice of the HKIAC Rules Does Not Establish Assent to a Contract Incorporating Those Rules**

Plaintiff does not oppose judicial notice merely for opposition's sake. The Court may take notice under Federal Rule of Evidence 201(b)(2) of the existence and contents of publicly available HKIAC rules where their authenticity is not reasonably disputable. Defendant's Request may be granted to that limited extent.

But judicial notice answers only what the Rules say. It cannot establish the adjudicative fact that Doe agreed to Defendant's Terms, that those Terms incorporated the Rules as against her, or that she saw a particular signup interface.

The temporal point should also be kept straight. The attached HKIAC Administered Arbitration Rules became effective June 1, 2024, after Plaintiff's alleged February account creation. RJN Ex. 1. The January 9 Terms, however, refer to the HKIAC Rules "in force when the Notice of Arbitration is submitted." Cen Decl. Exs. A, B § 12(a). Thus, if Defendant first establishes a binding January agreement, the contract's dynamic incorporation language may make the 2024 HKIAC Rules relevant to a later arbitration. Plaintiff need not dispute that proposition. It still does nothing to prove the antecedent January or February assent.

**C. Defendant's Remaining Enforceability Arguments Cannot Cure Nonformation and, to the Extent Reached, Present Additional Problems Under the Actual January Terms**

**1. If A Valid January Agreement Exists, Its Broad Scope Likely Reaches These Privacy Claims; That Does Not Prove the Agreement Exists**

Plaintiff does not ask the Court to strain the text of Section 12(a). The January 9 Terms define covered disputes broadly and expressly encompass disputes associated with Lovense's website, mobile application, policies, and "privacy." Cen Decl. Exs. A, B § 12(a). If Defendant proves that Doe became bound by those Terms, the pleaded CCPA, CPRA, UCL, negligence, and negligence per se claims comfortably "touch matters" encompassed by that language. See *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999); *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).

But scope is not formation. Presumptions favoring arbitrability address the interpretation of an existing arbitration agreement, not whether one was formed. *Granite Rock*, 561 U.S. at 301. Defendant cannot use the breadth of Section 12 to prove Doe agreed to Section 12.

**2. The Adhesive Consumer Setting Supplies Procedural Unconscionability, While the Foreign Seat and Cost Structure Warrant Scrutiny, But Plaintiff's Strongest Objection Remains Formation**

If the Court reaches unconscionability, California employs a sliding scale requiring some measure of both procedural and substantive unconscionability. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910–11, 353 P.3d 741 (2015); *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125–30, 447 P.3d 680 (2019). Defendant is therefore correct that adhesion by itself does not invalidate an arbitration clause. It is not correct that adhesion becomes legally irrelevant.

On Defendant's own account, account registration required acceptance of standardized Terms drafted by Defendant, with no disclosed opportunity to negotiate and no arbitration opt out identified anywhere in the January Terms. Cen Decl. ¶¶ 4–9 & Exs. A, B. That is at least some procedural unconscionability. See *Sanchez*, 61 Cal. 4th at 915.

The substantive analysis must be equally record specific. The January Terms select Hong Kong law for the agreement, Hong Kong law for the arbitration clause, and Hong Kong as the arbitral seat. Cen Decl. Exs. A, B § 12(a), (b). A foreign arbitral seat is not inherently unconscionable, and Defendant identifies a business connection through affiliated Hong Kong operations. Cen Decl. ¶ 17. Nor do the HKIAC Rules necessarily require Plaintiff physically to appear in Hong Kong. Those considerations make a categorical foreign forum attack inappropriate.

The costs require more care than Defendant gives them. HKIAC Article 34 defines arbitral costs to include tribunal fees and expenses, expert or other tribunal assistance, potentially recoverable legal representation costs, the registration fee, administrative fees, and HKIAC expenses. RJN Ex. 1, art. 34.1. Article 41.1 provides that HKIAC will, "in principle," request each side to deposit an equal amount in advance toward tribunal fees, tribunal expenses, tribunal assistance, registration fees, and administrative fees; supplementary deposits may follow, and nonpayment can lead to suspension or termination. *Id.* arts. 41.1–41.4.

Defendant cites Article 10 for "flexibility," Mot. Mem. at 15, but Article 10 concerns the methodology for determining arbitrator remuneration; it does not eliminate Article 41's advance deposit regime. The attached Schedule 1 likewise states that a claimant must pay a registration fee set by HKIAC and that the fee ordinarily is nonrefundable. RJN Ex. 1, sched. 1 ¶¶ 1.1–1.3.

On the present record, however, Plaintiff has not supplied evidence of her finances, a current HKIAC fee quotation, or the likely amount of the deposits for this dispute. Under *Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79, 90–92 (2000), speculation concerning prohibitive arbitral expenses is generally insufficient. Plaintiff therefore need not overreach by asking the Court to invalidate the clause based on costs alone. The more defensible point is narrower: Defendant has not established its sweeping assertion that the HKIAC regime imposes no meaningful consumer burden, and those foreign forum and advance cost provisions contribute to the unconscionability analysis if the Court reaches it.

The same disciplined approach applies to *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012–15 (9th Cir. 2023), and *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 680–89 (9th Cir. 2024). Those decisions demonstrate that generally applicable California unconscionability principles remain available where properly directed at an arbitration or delegation arrangement; they do not make every online consumer arbitration agreement unconscionable. Plaintiff's case does not require such a rule.

And to the extent *Balen*'s narrow treatment of Convention defenses limits application of California specific unconscionability doctrines to an otherwise qualifying Convention agreement, Plaintiff preserves the issue but need not depend on it. Formation resolves the Motion before that question.

**3. Section 1798.192 Does Not Automatically Invalidate Bilateral Arbitration, But Defendant Cannot Use FAA Preemption to Erase Substantive Statutory Remedies or the January Terms' Own Class Waiver Consequence**

California Civil Code § 1798.192 provides that a contractual provision purporting to waive or limit a consumer's rights under the CCPA, including rights to remedies or means of enforcement, is contrary to public policy and unenforceable. Compl. ¶ 9 n.5.

Plaintiff does not contend that § 1798.192 permits California to require class arbitration in the teeth of the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011), precludes state rules that condition arbitration on class procedures. And *Sanchez*, 61 Cal. 4th at 923–24, applied that principle to a California statutory antiwaiver regime. Defendant is therefore correct on that discrete proposition.

But it does not follow that § 1798.192 is meaningless. Arbitration may alter forum and procedure; it may not be used to prospectively extinguish nonwaivable substantive statutory rights. See *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235–36 (2013). Defendant itself insists that Doe remains able to pursue all substantive CCPA remedies in arbitration. Mot. Mem. at 15–16. The Court can hold Defendant to that position without deciding a preemption issue broader than this case presents.

There is a separate contractual point Defendant overlooks. The governing January language, if there is a contract, expressly says that if the class or consolidated action waiver is "deemed invalid or unenforceable," neither party is entitled to arbitration. Cen Decl. Exs. A, B § 12(c). That is Defendant's own drafting choice, not a California rule compelling class arbitration. Consequently, should the Court find the historical waiver unenforceable on a nonpreempted ground, the January Terms themselves prescribe litigation rather than severance and individual arbitration.

Defendant cannot evade that condition through Exhibit C's later general severability provision unless it first proves that Doe assented to the October 10 amendment.

**4. *McGill* Does Not Invalidate an Arbitration Agreement Merely Because Plaintiff Seeks Class Relief, But Defendant May Not Construe Its Waiver to Eliminate Genuinely Public Injunctive Relief in Every Forum**

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951–52, 961–62, 393 P.3d 85 (2017), holds unenforceable a provision that prevents a claimant from obtaining public injunctive relief in any forum. The Ninth Circuit has held that the *McGill* rule is not preempted by the FAA because it preserves a substantive remedy without requiring class arbitration. *Blair v. Rent A Center, Inc.*, 928 F.3d 819, 822–31 (9th Cir. 2019).

But not every classwide injunction is a "public injunction." Under *Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535, 541–43 (9th Cir. 2021), the relief must have the primary

purpose and effect of prohibiting unlawful acts that threaten future injury to the general public rather than redressing injuries principally to the plaintiff or a defined group of customers.

The Complaint's prayer seeks, among other things, free credit monitoring for Plaintiff and the Class and an order requiring Defendant "to implement reasonable security procedures and practices to protect customers' PII." Compl., Prayer ¶ C; see also *id.* ¶¶ 16, 63, 109. Credit monitoring for the putative class is plainly class focused relief, not a *McGill* public injunction. The prospective security injunction presents the closer question because it could protect Lovense users beyond the certified class and future consumers, but the Complaint's characterization of the suit as benefiting the public, *id.* ¶ 63, does not alone satisfy *Hodges*.

Accordingly, *McGill* should not be the foundation of Plaintiff's opposition. It operates as a protective alternative. If Defendant's position is that an individual HKIAC arbitrator remains empowered to award the prospective security relief Plaintiff seeks, there may be no *McGill* waiver to adjudicate now. If, however, Defendant construes its prohibition on class or representative proceedings to mean that Doe may obtain **no public injunctive relief in any forum**, that construction is unenforceable under *McGill* and *Blair*. And under the January Terms' own Section 12(c), invalidation of the relevant class or consolidated action waiver would trigger the provision stating that neither side is entitled to arbitration. That result follows the contract Defendant drafted; it does not impose class arbitration.

### D. Because Defendant Has Not Established an Issue Referable to Arbitration Under a Valid Agreement, Neither Compulsion Nor a Section 3 Stay Is Available

Section 3 does not supply an independent basis to halt this action. Its command applies when the Court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. The statutory premise is therefore the same premise Defendant has not established: an agreement binding Doe.

*Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024), requires a stay rather than dismissal when a court has found claims arbitrable and a party requests the stay. It does not require a stay where no valid arbitration agreement has been proved. Nor does *Ziober v. BLB Resources, Inc.*, 839 F.3d 814, 817 (9th Cir. 2016), dispense with that threshold.

Defendant's alternative request to stay supposedly nonarbitrable matters also assumes that some claim has first been properly referred to arbitration. If no agreement was formed, there is nothing to stay "pending arbitration."

If the Court ultimately determines that a valid agreement exists and that only certain claims or remedies are arbitrable, Section 3 governs issues properly referable under that agreement. Any broader stay of nonarbitrable matters must rest on the Court's ordinary case management authority and the circumstances warranting such a stay, not on a rule that every factually related nonarbitrable claim automatically disappears into arbitration. See *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–12 (9th Cir. 2005). Defendant's cited Fifth Circuit decision, *Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343, 347–48 (5th Cir. 2002), does not alter Ninth Circuit law.

More fundamentally, if the Court concludes that Defendant's current evidentiary showing is insufficient as a matter of law to prove what Plaintiff saw and did, the Motion should simply be denied. If instead the Court concludes that a genuine issue of material fact exists concerning the February 2024 registration flow, then the FAA specifies the next procedure. Section 4 states that where "the making of the arbitration agreement" is in issue, the court must proceed to determine that question. 9 U.S.C. § 4. Under *Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667, 670–72 (9th Cir. 2021), and *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831–32 (9th Cir. 2022), a material formation dispute cannot be bypassed by compelling arbitration; it must be resolved first, through appropriate focused proceedings and, if necessary, a trial on formation.

A recent Ninth Circuit memorandum applying those authorities is especially instructive, though nonprecedential. In *Dawson v. Target Corp.*, No. 25 4061, slip op. at 3–5 (9th Cir. Aug. 14, 2026) (mem.), the court vacated a ruling where factual uncertainty remained concerning whether the plaintiff encountered a particular app sign in page and which version of a checkout screen he saw. The panel directed the district court to resolve those predicates before deciding formation. The same discipline is appropriate here if the Court finds a factual dispute rather than a failure of proof.

What § 4 does **not** permit is Defendant's proposed shortcut: send Doe to a Hong Kong seated HKIAC arbitration so the tribunal can decide whether she ever agreed to go there.

## IV. CONCLUSION

The Motion should be denied. Defendant bears the burden to establish an agreement to arbitrate this dispute. It has shown that Lovense used a signup screen at some unspecified point "as of 2024," that the depicted screen contained language which, if actually presented to Doe and acted upon, could constitute a legally significant sign in wrap, and that Defendant maintained January 9, 2024 Terms containing a Hong Kong arbitration clause. Cen Decl. ¶¶ 5–6, 14–17 & Exs. A, B. It has **not** shown the missing links: when in February Doe registered, which interface her device displayed, which contractual version the hyperlink presented, whether she tapped the assent linked "Sign Up" button, or whether she ever completed the entirely separate checkout flow on which Defendant also relies.

Those deficiencies matter under *Chabolla* and *Godun*. The continuing nature of an app relationship may inform whether notice would be expected; it cannot establish the Plaintiff specific act of assent.

They also cannot be delegated away. *Ahlstrom*, 21 F.4th at 635, holds that formation remains for the court notwithstanding delegation language. Neither *Henry Schein*, *Rent A Center*, *Brennan*, *Oracle America*, *Portland General Electric*, nor HKIAC Article 19 authorizes an arbitrator to derive jurisdiction from a contract whose formation the moving party has not first established.

The Convention changes neither Defendant's burden nor the order of operations. Plaintiff acknowledges that a valid written agreement providing for Hong Kong arbitration in this international commercial relationship could fall within Chapter 2. But *Balen v. Holland America Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009), makes a written agreement the first Convention prerequisite. Defendant may not satisfy that prerequisite by assuming Plaintiff's assent.

The Court should therefore deny Defendant's Motion to Compel Arbitration and Stay Proceedings and permit this action to proceed. Alternatively, if the Court concludes that the record presents a genuine material dispute concerning the interface Plaintiff encountered or the conduct by which she allegedly assented, the Court should deny immediate compulsion, permit only such focused formation discovery as is necessary, and resolve the making of the arbitration agreement

pursuant to 9 U.S.C. § 4 and *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831–32 (9th Cir. 2022), before allowing any merits or arbitrability question to be sent to HKIAC.

Dated: October 7, 2026

**POTTER HANDY, LLP**

/s/ James M. Treglio

By: ______________________________

James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff